MICHAEL VARGO, PLAINTIFF-RESPONDENT, v. P. BALLAN-TINE & SONS (A NEW JERSEY CORPORATION), DE-FENDANT-APPELLANT, AND METROPOLITAN DIS-TRIBUTORS, INCORPORATED (A FOREIGN CORPORA-TION), AND ELIZABETH-UNION-HILLSIDE-IRVINGTON LINE, INCORPORATED (A NEW JERSEY CORPORA-TION), DEFENDANTS.

Submitted October 29, 1937—Decided January 26, 1938.

For the defendant-appellant, P. Ballantine & Sons, *John A. Matthews*.

For the defendant Elizabeth-Union-Hillside-Irvington Line, Incorporated, *Franklin, Kiernan & Cashion*.

For the plaintiff-respondent, *Francis A. Gordon (John M. Mackenzie, of counsel)*.

The opinion of the court was delivered by

WELLS, J. This was a suit to recover damages sustained by the plaintiff-respondent, Vargo, because of injuries received while a passenger in a bus owned and operated by the defendant Elizabeth-Union-Hillside-Irvington Line, Incorporated (hereinafter called "Elizabeth-Union Line"), which was in collision with a truck owned by the defendant Metropolitan Distributors, Incorporated, and leased to and operated by the defendant-appellant, P. Ballantine & Sons (hereafter called "Ballantine").

A verdict was rendered by the jury in favor of the plaintiff, Vargo, against both the appellant, Ballantine, and the defendant Elizabeth-Union Line in the sum of $22,500. The appeal from the judgment entered upon this verdict is taken by Ballantine alone.

Plaintiff submitted to a voluntary nonsuit against the defendant Metropolitan Distributors, Incorporated.

The accident, which was a head-on collision, occurred along a public highway known as Chestnut street in the township of Union. Michael Hanley was the driver of the Elizabeth-Union Line bus, which was proceeding in an easterly direction along said highway, and Charles Farcher, Jr., assisted by James Begley, was the driver of the Ballantine truck which was traveling in a westerly direction along said highway.

At the trial attorney for the plaintiff called as witnesses in behalf of the plaintiff the said Farcher and Begley to testify to events leading up to and including the time of the accident and the location of the bus and truck after they had

come to a stop. They naturally were hostile witnesses and sought to place the blame for the accident on Hanley, the driver of the bus.

On cross-examination, Farcher and Begley said that when their truck came to a stop after the accident it was about one hundred feet west of the point of collision and they "immediately" got off and saw the bus in a field about one hundred and fifty feet east of the point of impact; that they "immediately" proceeded up the road toward the bus and that they saw Hanley, the driver of the bus, approaching them and they met somewhere on the road between the bus and the truck, and that within "two, or three, or four minutes or so" after the accident they had a conversation with Hanley, in which he is alleged to have made the statement, which the court refused to permit Farcher and Begley to relate; which refusal is the sole ground for reversal argued on this appeal. The question asked Farcher on cross-examination was:

"*Q*. Before that happened, before you started back, and both of you were going toward the bus, did anybody from the bus approach you? *A*. Yes. The bus driver came down there. He was running down toward me. His forehead seemed to be cut and bleeding. He ran up to me——"

The attorney for the defendant Elizabeth-Union Line objected to the introduction of any testimony as to what Hanley, the bus driver, said. The court sustained the objection and exception was duly taken by the attorney for the appellant, Ballantine, on the ground that the statement made by the driver of the bus immediately after the happening of the accident was part of the *res gestæ* and therefore was admissible.

The question asked Begley on cross-examination was:

"When this man running from the bus met you and Charlie Farcher right after the happening of the accident on the road, on Chestnut street, and told you that he was the chauffeur, what did that man say to you?"

This question was objected to by the attorney for the plaintiff and by the attorney representing the defendant Elizabeth-Union Line, and the objection was sustained. The attorney

for the appellant, Ballantine, took exception, stating that the testimony was admissible on the ground that the answer to this question was part of the *res gestæ.*

The record does not disclose what Farcher and Begley would have testified Hanley said to them, but no point appears to have been made of this, and it is taken for granted on the briefs that Farcher would have repeated the testimony he gave at a previous trial of the case, namely that Hanley said—"I am the driver of the bus and want you to give me a break."

Chief Justice Beasley, in *State* v. *Hunter,* 40 *N. J. L.* 495, said: "Now I think I may safely say that there are few problems involved in the law of evidence more unsolved than what things are to be embraced in those occurrences that are designated in the law as the *res gestæ.* The adjudications on this subject, more especially in this country, are perplexingly variant and discordant."

Perhaps it is just as well, therefore, in considering the propriety of the trial court's action in excluding the answers to the questions in dispute, that it is not necessary to decide whether the testimony sought to be elicited thereby was admissible as part of the *res gestæ.* Our examination of the record convinces us that the answers were not admissible because the questions were not proper cross-examination, and that for that reason, if for no other, the trial court was justified in refusing to permit them to be answered.

As indicated before, these witnesses, on direct examination, merely testified as to their operation of the truck before the accident, their observations as to the approaching bus, the collision and the position and location of the truck and bus after the accident.

At no time did plaintiff ask them questions concerning what was said or done after the truck came to a stop.

It needs no citation of authority that in a civil case cross-examination cannot go beyond the matters covered on direct examination, except to affect the credibility of the witness. The questions clearly were not intended to affect the credibility of the witnesses Farcher and Begley, to whom they

were addressed, and could not affect the credibility of Hanley, who had not as yet testified as a witness.

It is well settled that the control of examination, both direct and cross, resides in the trial judge so that the proofs may be kept within reasonable bounds and that the trial court is vested with a wide discretion, and this court will not interfere with the exercise of such discretion unless there has been an abuse or a most unwise use thereof. *Donovan* v. *Limouze,* 108 *N. J. L.* 494.

"The general rule is that cross-examination should be confined to matters that have been brought out on the direct examination (*State* v. *Skillman,* 76 *N. J. L.* 464) and if the cross-examining party wishes to obtain the testimony of the witness as to matters not proper on cross-examination, he must do so by calling the witness to the stand as his own and subjecting him to direct examination in regard thereto. *State* v. *Zeilman,* 75 *Id.* 537." *Robbins* v. *Thies,* 117 *Id.* 389.

Appellant's attorney, however, did not pursue this course. Had he done so and had the trial court refused to permit Farcher and Begley as appellant's own witnesses to testify as to Hanley's statements, we might well have been required to pass upon the admissibility of the testimony as part of the *res gestæ.*

Furthermore, we do not think that appellant was prejudiced, or in anywise injured, by the refusal of the trial court to permit Farcher and Begley to answer the questions. It appears from the record that after they had testified and appellant had unsuccessfully endeavored to inject Hanley's alleged remark into the case, Hanley was called by the plaintiff as a witness and he placed the blame for the accident on Farcher, the driver of the truck. Appellant made no attempt to cross-examine Hanley as to the alleged remark, for the purpose of affecting Hanley's credibility. If Hanley denied making the remark and it was competent for rebuttal, Begley and Farcher could have been called to testify that Hanley had so spoken.

Finding no reversible error in the record, the judgment is affirmed.

566

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ.   14.

*For reversal*—HEHER, J.   1.