[Civ. No. 12811. First Dist., Div. One. July 6, 1945.]

TOM KYNE, JR., a Minor, etc., Appellant, v. TOM KYNE, Respondent.

Allen Spivock for Appellant.

John T. Rudden, Jr., William P. Clecak and Doyle & Clecak for Respondent.

PETERS, P. J.—By a judgment affirmed by this court (*Kyne* v. *Kyne*, 38 Cal.App.2d 122 [100 P.2d 806]) defendant Tom Kyne was ordered to pay a monthly sum for the support of plaintiff, Tom Kyne, Jr., found by a jury to be Tom Kyne's illegitimate son. The present proceeding is a motion in the original action to increase the monthly support allowance from $60 to $250, and for attorneys' fees. The trial court denied the application for an increase, and awarded plaintiff's attorneys for their services on the motion the sum of $150. Plaintiff appeals from both portions of the order, contending that the trial court abused its discretion in denying the increase and in fixing the amount of the fee, and that prejudicial error was committed in excluding certain evidence.

The main action was brought under section 196a of the Civil Code which, prior to certain 1939 amendments, read as follows: "The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, and in such action the court shall have power to order and enforce performance thereof, the same as under sections 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife." It has been held that the issues involved in fixing the amount of support under this section are of equitable cognizance. (*Kyne* v. *Kyne*, 38 Cal.App.2d 122, at p. 133 [100 P.2d 806].)

The original judgment was dated December 16, 1937. At that time plaintiff was one year and ten months old. The judgment provided that defendant should pay to plaintiff $100 a month from the date of birth, February 15, 1936, to January 15, 1938, and thereafter "and continuing until further order of this Court, or until the majority of plaintiff" the sum of $60 per month. Defendant has made all payments called for by this judgment. No application for an increase

was made until the present motion was noticed for March 22, 1944. On that date plaintiff was eight years and one month old. The motion was based on the theory that since the original order was made in 1937 circumstances have so changed that an increase in the award is warranted. The alleged changed circumstances are that plaintiff is now eight years old, that the cost of living has increased since 1937, that defendant's income has increased since 1937, and that the health of plaintiff's mother is now such that she cannot work to contribute to his support.

Before directly discussing the evidence some reference should be made to the rules of law applicable to this type of proceeding. In fixing the amount of allowance the trial court necessarily has a wide discretion, and unless there has been an abuse of discretion the appellate court will not interfere with the determination of the trial court. (*Gambetta* v. *Gambetta*, 30 Cal.App. 261 [157 P. 1141]; *Brockmiller* v. *Brockmiller*, 57 Cal.App.2d 623 [135 P.2d 184]; *Hale* v. *Hale*, 55 Cal.App.2d 879 [132 P.2d 67]; see cases collected 9 Cal.Jur. § 147, p. 809.) But the discretion conferred on the trial court is not absolute. As was said in *Makzoume* v. *Makzoume*, 50 Cal.App.2d 229, 231 [123 P.2d 72]: "But this discretion is not arbitrary. '. . . it must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities, and the financial ability of the husband. . . . In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered.' (1 Cal.Jur. 965.)" (See, also, to the same effect *Kosloff* v. *Kosloff*, 67 Cal.App.2d 374 [154 P.2d 431].)

In such a proceeding the trial court is not bound by technical rules of evidence. (*Rose* v. *Rose*, 109 Cal. 544 [42 P. 452]; *Busch* v. *Busch*, 99 Cal.App. 198 [278 P. 456]; *Youree* v. *Youree*, 1 Cal.App. 152 [81 P. 1023].) The trial court should admit all relevant testimony relating not only to the needs of the child but also to the financial condition of the mother and father. A child, legitimate or illegitimate, is entitled to be supported in a style and condition consonant with the position in society of its parents. As was said in *Bailey* v. *Superior Court*, 215 Cal. 548, at page 555 [11 P.2d 865]: "The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more."

The evidence in the present case, insofar as it relates to the issue of support, consists of the testimony of defendant, called by plaintiff under section 2055 of the Code of Civil Procedure, and the deposition of plaintiff's mother. Defendant offered no evidence at all on his own behalf. Defendant testified that in 1943 he had filed a separate income tax return showing an income of about $6,400 for that year. He admitted that his wife likewise filed a separate return in the identical amount and that this entire income was from his business. Plaintiff then sought to prove that defendant's actual income in 1943 was in fact $30,000. The trial court sustained objections to these questions. Counsel for plaintiff then made a formal written offer to prove that defendant had testified in 1936 and 1937 that he had transferred to his wife in April, 1936, just after the birth of plaintiff, certain real property, his interest in a partnership operating a concession at Bay Meadows and certain stock; that the above was all of defendant's property with the exception of his betting commission business; that all of said transfers were made without consideration and for the express purpose of preventing plaintiff and his mother from obtaining any of said property for plaintiff's support; that after making said transfers defendant received the income from the above-mentioned properties from his wife whenever he wanted it; that in 1943 the total income from the stock, the Bay Meadows partnership and the betting business was $30,000. As already indicated, the trial court refused to admit this testimony. The trial court also sustained objections to all questions relating to the income of defendant's wife. Defendant testified that in 1937, when the original order for $60 per month was made, he had testified that his income was then $2,000. The trial court sustained an objection to the following question: "Was that affidavit and your sworn testimony that your income was $2,000.00 in 1938, true?" Counsel for plaintiff then attempted to get the witness to discuss his probable earnings in 1944 but the trial court sustained objections to all such questions. All of these rulings were erroneous, and clearly prejudicial. As already pointed out, one of the major issues in such a proceeding is the financial position of the father. Obviously, what might be a reasonable award against a father making $6,400 a year might and probably would be totally inadequate against a father making $30,000 a year. If defendant had in fact divested himself of his properties to defeat plaintiff's

claims for support, and if he was still enjoying the income from such properties, the trial court should have considered those facts in making the award.  ▮  The law is well settled, and defendant cites no case to the contrary, that property fraudulently conveyed by a husband or father should be considered in fixing alimony or support. The rule is thus stated in 27 Corpus Juris Secundum 955, section 233(b): ''Property fraudulently conveyed by the husband to third persons may be considered in fixing the amount of alimony to be awarded.'' (See, also, 19 C.J. § 588(2), p. 253; cited in support of both texts are *Dougan* v. *Dougan,* 90 Minn. 471 [97 N.W. 122]; *Griffith* v. *Griffith* (Mo.App.), 190 S.W. 1021; *Grobart* v. *Grobart,* 119 N.J.L. 565 [182 A. 630]; *Ball* v. *Ball,* 206 Ky. 532 [267 S.W. 1081]; see, also, *Youree* v. *Youree,* 1 Cal.App. 152 [81 P. 1023].)  ▮  Defendant tacitly admits that in most cases evidence of fraudulent transfers is admissible in support cases, but urges, without citation of authority, that it was not admissible here because the evidence shows that long prior to the filing of the present motion plaintiff instituted an action against defendant to have these allegedly fraudulent transfers set aside, and that such action is still pending in another department of the superior court. There was no showing that the delay in deciding that case was in any way the fault of plaintiff. The exact theory why the pendency of this action should make the proffered evidence inadmissible is not very clearly stated by defendant. He states: ''If the trial judge in the instant case had allowed evidence of the purported fraudulent transfers to be introduced, he would, in effect, be passing upon or rendering a decision in a matter that was not properly before the court and, in fact, was under submission in another department of the same court before a different judge.'' (Res. Br. p. 10.) Apparently it is the thought of defendant that the pendency of the other action creates some sort of estoppel. The contention is without merit. The mere fact that plaintiff, to protect his rights in certain other judgments he has against defendant, has seen fit to bring an action to have certain claimed fraudulent transfers set aside cannot justify the trial court's refusal to consider all relevant evidence in this support proceeding.  ▮  Support proceedings are of an emergency nature, and both parties are entitled to have all relevant evidence admitted on the issues involved.  ▮  One of the main issues

involved is the actual income of the father. Here plaintiff not only offered to prove that the transfers were fraudulent, but also that the income from the properties was actually made available to defendant by his wife whenever he wanted it. This was certainly relevant testimony on the issue of defendant's ability to pay, and its exclusion was clearly not only erroneous but also prejudicial.

The evidence as to the wife's income also should have been admitted. Obviously, in considering defendant's ability to pay, evidence of his obligations, including his duty of support of his wife, is admissible. If the evidence shows that the wife has a large independent income and is in fact not being supported by the husband, those factors would be clearly relevant in determining how much money defendant actually had available to support his son.

The various questions relating to defendant's prospective income for the year 1944 were also proper. They were not speculative. Plaintiff was entitled to show, if he could, that defendant's income for 1944 would in all probability exceed that for 1943.

The trial court should clearly have permitted counsel for plaintiff to inquire as to whether, in 1937, when the original award was made, defendant's income was but $2,000. If the original award was based on such an income, the admitted increase of income to at least $6,400 a year would be a most relevant factor to consider in determining whether the award should be increased.

In view of these serious and prejudicial errors the issues here involved must be sent back for a new trial. It should be mentioned that plaintiff's mother testified to facts which, if believed, amply warranted an increase in the support allowance. Some time before she filed this proceeding as guardian ad litem for her son, she underwent a hysterectomy for a cancerous condition of her female organs. She was in bed when her deposition was taken and had been told that she must remain there indefinitely and would not be able to work for at least a year. She was heavily in debt to relatives and doctors for expenses in connection with her operation. She has no assets of any kind. She testified that plaintiff is unable, on the allowance now existing, to dress like other boys, and has on occasion, expressed to her his embarrassment caused by his lack of proper clothing; that for the same reason

he cannot attend Sunday School; that she has been unable to buy him toys similar to those the other boys in his class have; that the boy would like to study music but she cannot, out of the present allowance, pay for such lessons; that the boy would like to go to a summer camp with his friends but cannot do so for lack of money; that the boy needs his tonsils removed but has no money to pay for the operation; that because of her sickness she must hire someone to assist her in caring for the boy. She also testified that she is now married; that her husband had been in the service; that he had been discharged about five months before the date her deposition was taken; that he was temporarily employed as a bartender at a salary of about $200 per month. Her husband, of course, is under no legal responsibility to contribute to the support of the child. Defendant analyzes the testimony of this witness, and by making certain calculations, proves to his apparent satisfaction that the witness admitted that $60 a month was all that was necessary to support the boy. This result is arrived at by simply disregarding certain of the items appearing in her testimony, such as the proposed tonsilectomy, the cost of music lessons, summer camp and incidentals, and by making no allowance at all for a reasonable amount for the care of the boy. While her estimate of $250 a month was undoubtedly too high, there can be no reasonable doubt but that the evidence demonstrates to a certainty the need for a material increase in the award. If the $60 award was reasonable in 1937, under the circumstances then existing, and we must conclusively presume that it was, then, in view of the increased cost of living in recent years, in view of the mother's present inability to contribute to the child's support, in view of the increased income of the defendant, and in view of the other changed circumstances appearing in the record, the need for an increased allowance was definitely established. In the light of this evidence, it might well be held that as a matter of law this plaintiff established the need for such an increased allowance. However, in view of the erroneous and prejudicial rulings in the evidence already discussed, it is not necessary to base the reversal on this ground. There can be no doubt that the rulings on the admission of evidence were erroneous and were prejudicial, and this alone requires a reversal.

So far as the allowance of attorneys' fees is concerned, it is obvious that there must be a new trial and that further ser-

vices in connection with the motion have been rendered on this appeal and will be rendered on the new trial. The trial court on the new hearing will be in a position to evaluate the services as a whole. For that reason justice will best be served by reversing that portion of the order appealed from.

The portions of the order appealed from are reversed.

Knight, J., concurred.

WARD, J.—I dissent. This is an appeal from an order and decree denying plaintiff's motion to increase an allowance for support from $60 to $250 a month and ordering defendant to pay $150 for legal services. No appeal is taken from the order insofar as it directs that an amount of $16.43, in addition to $100 already paid as costs on this motion, shall be paid by defendant. In brief, the appeal involves the following: Does the record support the order denying an increase in the monthly payment for the support of the plaintiff child? Was the trial court justified in refusing to admit testimony relative to a transfer of certain property by defendant to his wife? Should the trial court have awarded more than $150 as attorney fees?

In an application of this kind, while the discretion given the trial court to fix amounts to be paid for support may not be used arbitrarily, of necessity a wide latitude must be allowed for the reason that an appellate court is unable to test the credibility of witnesses or note their reaction, generally or particularly, during the giving of testimony. Unless the conclusion of the trial court indicates a plain abuse of discretion resulting in injustice to one side or the other, an appellate court should not interfere. " 'In a legal sense, discretion is abused whenever in its exercise, a court exceeds the bounds of reason.' " (*Makzoume* v. *Makzoume,* 50 Cal.App.2d 229, 231 [123 P.2d 72].)

A parent's duty may not end by supplying necessaries if he is able to afford more (*Bailey* v. *Superior Court,* 215 Cal. 548 [11 P.2d 865]), but that does not mean that a parent should be forced to maintain a child, the mother of the child and her relatives in a state of luxury as compared with their former mode of living if the trial court may reasonably draw an inference of the existence of such a situation. There is evidence that formerly the family of the minor plaintiff's mother contributed to the upkeep of her home, and that she borrowed

money from her brother and sisters, but the principal means of the family's support was the $50 a week which the husband of plaintiff's mother received as salary, plus the monthly payment of $60 by defendant for the support of the minor, which amount was paid regularly. No record of the disbursement of the $60 was kept. The money seems to have been mingled with the husband's salary of approximately $225 a month.

The guardian ad litem, the mother of the minor child, now requests $250 a month. My associates find that such amount "was undoubtedly too high . . . but that the evidence demonstrates to a certainty the need for a material increase in the award." The majority opinion also declares that "it might well be held that as a matter of law this plaintiff established the need for such an increased allowance." If it might be so held, why not do so and eliminate the discussion of prejudicial error in the rulings of the court on the admission of evidence. If the alleged errors of the court on admission of evidence afford a sound basis for reversal, I cannot understand the purpose of a reviewing court determining as a fact that $250 is too high and $60 too low. As I understand the function of an appellate court, in a proceeding of this nature, it is to determine whether there is any substantial evidence to support the conclusion of the trial court. The opinion of my associates in reference to the minimum and maximum amounts is not an adjudication and hence not binding on the trial court.

It is my duty to determine whether the trial court under all the circumstances abused its discretion in denying an increase. (*Brockmiller* v. *Brockmiller*, 57 Cal.App.2d 623 [135 P.2d 184].) In that regard the following circumstances may be considered. The record shows that the defendant has never been in default in the $60 monthly payment for the support of the child. This is the first attempt since the original order was signed in 1937 to obtain an increase. About two and a half years prior to the present hearing the mother requested one of her attorneys to have the amount increased, but the attorney thought "That at the present time sixty dollars was probably enough." At a later date the attorneys could not present the motion for increase because they were busy with another appeal in the same case.

There does not appear to have been a diligent effort to increase the amount until the present application was filed, in which it is claimed the boy needs $250 a month. The mother

testified to expenditures for necessaries, such as food, clothing, etc. in itemized amounts which total $601.50 annually. A balance of $118.50 from the $720 contributed yearly by defendant was left to pay for luxuries for this nine-year-old boy —a sum in excess of $9.00 a month.

The amount claimed by the mother as proper for necessities and luxuries is $250. It should be remembered that the income of the mother's husband and the payments for the support of the child have not been heretofore segregated. The amount of $250 exceeds the income of the mother's husband by $25 a month *when* he is working. The mother itemized the amounts which total $250 as follows: food, $40; clothing, $40; medical care, $15; housekeeper, $100 salary and $25 food; toys, vacation, music lessons, etc., $30 a month. In addition, the mother testified that she owed $800 for doctors' and hospital bills and several thousand dollars to other parties from whom she had borrowed money. She also discussed the probability of sending the minor to a boys' summer camp for three months at a cost of $100 a month, and the possibility of an operation for the removal of his tonsils and adenoids at a cost of from $150 to $180. These items would seem to be extraordinary expenses for which a special application to the court might be made if the vacation is advisable and the operation necessary. Whether the $300 vacation cost plus the "$150.00 to $180.00" was included in the amount requested by appellant is not made plain. If such amounts were included in the yearly total, there would be insufficient funds to pay for music lessons, toys, etc.

Much of the evidence presented by the mother is a recital of her own unfortunate physical condition, and some of the questions presented to the defendant might indicate a desire to prove and force him to admit that he is in the "betting business." There is not an iota of evidence in the present record that he is in that business. Though one might unconsciously be prejudiced against the defendant, and likewise sympathetic with the ill mother, after reading appellant's brief I am satisfied that it was not the intention of appellant to override judicial rules and have this case decided by the trial court through sympathy on the one hand or prejudice on the other.

The trial court was not only fair in assisting appellant to prove his case by pointing out the proper method of procedure, but stated several times that "There is just one issue before

me: Does this child require more money? And should the defendant pay more money? And are the assets such that he should pay more money?" Appellant seemed anxious to prove that the wife of defendant is in possession of certain assets the income from which amounts to $25,000 a year. The court insisted that the first issue to determine was: "Does this child require more money?" The trial court may have taken judicial notice (Code Civ. Proc., § 1875) of the fact that during the depression years $60 a month for the support of a child of one or two years was in excess of the ordinary allowance by 50 per cent or more. The trial court found that for a child of nine years $60 was more than enough to cover expenses for necessities, leaving $10, minus a few pennies, for luxuries, and that it was sufficient under the present circumstances. The court may have considered that expenditures from the $60 had not been segregated from those made from the mother's husband's $225, and that the $250 might assist materially in supporting the family when the husband was not working. The court considered that if the testimony relative to the physical condition of the mother is true, in a short period she will be incapacitated and unable to care for the child, in which event his best interests would doubtless require investigation and readjustment. It is impossible to determine the exact reasons actuating the trial judge, but from the foregoing facts and circumstances he may have concluded that there should not be an increase in the amount for the support of the child. If so he did not act arbitrarily. It is the duty of appellant to establish an abuse of discretion. (*Hale* v. *Hale,* 55 Cal.App.2d 879 [132 P.2d 67].) In *Gambetta* v. *Gambetta,* 30 Cal.App. 261, 263 [157 P. 1141], referring to an amount fixed by the trial judge, the court said: ". . . we are not in a position, nor are we disposed, to interfere with the conclusion of the trial court upon that subject." I am unable to say that the trial judge, in view of all the circumstances, abused his discretion and that as a matter of law he exceeded "the bounds of reason." (*Sharon* v. *Sharon,* 75 Cal. 1, 48 [16 P. 345].) This brings me to a consideration of the designated cause of reversal set forth by appellant.

Among the "issues involved" the opening brief presents the following: "In determining the amount of support by a father for his minor child, may the Court refuse to consider the father's admittedly fraudulent transfer of about

$100,000.00 worth of his property to evade said support?" The opening statement contains the following: "[Attorney for Appellant] We expect to prove, we expect to show when the $60.00 allowance was made in 1938 or 1939, it was based on a showing and affidavit filed in the papers of this case by Tom Kyne, saying his earnings were $200.00 a month. . . . We expect to show further, from official records and transcripts, that at that time he was making over $25,000, and today we will show he is making in excess of that amount. That will be our showing in this case." The transcript also shows the following: "[Attorney for Appellant] Q. Well, let us ask the direct question. Take the period for the last twelve months, what has been your average earnings each month? A. I made about $6400.00 last year. . . . Q. Now, Mr. Kyne, do you own any shares in the Multnomah Kennel Club? A. No, sir, I don't. Q. Does your wife? A. Yes, sir, she does. . . . Q. Now, isn't it true, Mr. Kyne, that you testified earlier that the reason for that transfer on those just referred to hundred shares at the dog track, was because you felt you were being blackmailed in this paternity case? [An objection was here sustained.] . . . Q. Now, Mr. Kyne, that $6400.00, without telling us where it came from, did not come from either the earnings from the dog track or the H & K concessions? A. No sir. THE COURT: Q. So you claim no further interest in those matters? A. That is right, Judge. . . . THE COURT: The only thing I am concerned about now is his present financial status, and what the child's requirements are. [Attorney for Appellant] Very well. For the record, Your Honor, may we make an offer of proof at this time: That six or seven years ago this defendant transferred assets in the neighborhood of $100,000.00 to his wife. We expect to show—— We offer to show that the purpose for which that transfer was made was to evade his liability to this child. We offer further to show that at the present time his wife is receiving in the neighborhood of $25,000.00 a year from these very assets that were transferred by this defendant to his wife, to evade his liability toward this child. That is our offer of proof." The offer was denied. The transcript also shows: "[Attorney for Appellant]: Q. And at that time is it true you testified, and filed different papers under oath that your earnings were $2,000.00 or thereabouts a year? A. At that time, yes." The witness was then interrogated relative to his interest in a race track,

his bank accounts, commercial and savings, stock and bonds held by himself or by any person for him. He testified that he did not receive money from his wife at "any time" he asked for it.

A written offer of proof was introduced as an exhibit. It contained the following offers pertinent to the present claim of prejudicial error in the admission of evidence: (1) That defendant shortly after the birth of the minor transferred to his wife, without financial consideration, certain real property and interests in certain concessions for the "purpose of preventing plaintiff and his mother from obtaining any of same for plaintiff's support or otherwise"; (2) that after said transfers he received income from the above property from his wife whenever he wanted it. There is definite testimony that he did not receive any income from any of the property whenever he wanted it. It appears that a separate action to set aside the alleged fraudulent transfers is now pending.

If defendant had testified in a previous proceeding that he transferred property to his wife because he thought that he was being blackmailed, appellant should have produced and confronted the witness with the record. I do not quite understand how appellant would have gained an advantage had the defendant been permitted to repeat (if he had previously so testified), that he had transferred the property because he thought he was being blackmailed.

All questions relating to the income of defendant's wife in the form in which they were propounded, irrespective of relevancy or materiality, were objectionable as incompetent. Notwithstanding that under judicial decision in this class of cases the court is not always bound by technical rules, nevertheless litigants should present the best evidence reasonably obtainable. All of these matters could have been proved, if true, by the production of other evidence which the surrounding circumstances show to have been available. Defendant testified that he had no interest in or income from his wife's property. Appellant did not seek to call defendant's wife as a witness or to contradict him by other evidence.

Property fraudulently conveyed to some other person by a parent with intent to defraud a minor child may be considered in fixing the amount of support to be awarded unless it appears that there are sufficient funds to amply cover the support of the child without considering property which, as

in the present case, up to date has never been judicially declared *fraudulently* conveyed property.

Unless proof of the alleged fraudulent transfer is vital to this case, the evidence should not be admitted. Ordinarily litigants should not be permitted to unravel issues in one action by instituting a second action which is not a part of the main proceeding, but the evidence thereon merely tends to prove or disprove a vital issue in the first action. It is true that support of a minor child is a matter in which the state and the parties are materially interested. The truth of a statement made in 1938 that if the wife returned the alleged fraudulently conveyed property the defendant would have an income of $25,000 a year is immaterial if the parent has sufficient *now* to support the child.

The amount that the mother requests is $250 a month. If appellant's statement is correct—that the $60 a month order was based on an income of $2,000 a year, then the trial court, if convinced that any increase should be made would be justified in awarding $180 odd dollars a month based upon an income of $6,400 a year. There are certain statements in appellant's brief from which an inference may be drawn that appellant did not expect to obtain $250. In the brief the following appears: "The estimate of $125 per month for the boy's needs was reasonable. . . ." This, of course, would exclude the $125 for the housekeeper who would be performing work not only for the child but for the mother and the mother's husband. However, it may be contended that the "$125" was a clerical error; that $250 is the figure intended in the brief. This is not borne out by the subsequent statement in the brief that "The denial of *any* increased support above said $60.00 per month is shocking. . . ." (Emphasis added.) This statement is repeated in substance in the closing brief. On appeal there is no real contention made that the amount should be fixed in the sum of $250.

In my opinion the transcript indicates that the trial judge was patient and helpful to appellant during the presentation of the evidence. He had a thorough grasp of the issues involved and the purpose of the application. He also refused to permit appellant to attempt to degrade the defendant on matters which were not vital to the issues in the case. The record indicates that the hearing was conducted in a dignified manner and that the rulings on admission of evidence were fair and just under all of the circumstances, and in accord-

ance with the established rules of evidence. The record does not indicate that the trial judge was in any respect swayed by caprice or partiality, or that he was arbitrary in the conduct of the hearing. Certainly appellant was not prejudiced by any ruling made in this particular proceeding. At a later age and under different circumstances the trial court might be justified in changing the amount of support for this minor.

So far as the appellate court is concerned, its function and the trial court's broad latitude in passing upon the evidence were well set forth as follows by this court during the oral argument: "Now, it is incumbent upon you, as I see it, to show not only that the evidence would have supported an increase in the award, but that that is the only possible conclusion and that the Trial Court's power to pass on credibility of witnesses, which is almost unlimited, pass on the weight of the evidence—— you have to say that the only possible conclusion as a matter of law that can be entered here that there was no basis for the Trial Court disbelieving your testimony, it is not a question of whether there is any evidence to support the negative finding; it is whether or not it is compelled to enter into a finding raising the award, considering the fact that the Trial Court has a power to pass on credibility and weight of evidence. . . . Of course, the Trial Court is in a different position than the Appellate Court in passing on credibility of witnesses. What may seem to be totally uncontradicted evidence here so far as the record is concerned may have other factors of inherent weakness that makes the Trial Court nearly omnipotent in that field."

The last question presented on appeal is the question of the insufficiency of the order for attorney fees. The majority opinion reverses that portion of the order and suggests that on a new trial the court may "evaluate the services as a whole." This may be done if the defendant consents to such procedure (*Newlands* v. *Superior Court*, 171 Cal. 741 [154 P. 829]), otherwise an allowance may not be made for past services. (*Dixon* v. *Dixon*, 216 Cal. 440 [14 P.2d 497]; *Brockmiller* v. *Brockmiller, supra.*) Supplemental allowances may be made. (*Collins* v. *Welsh,* 2 Cal.App.2d 103 [37 P.2d 505].) "The court has no jurisdiction to order payment for services rendered prior to the order." (*Shopiro* v. *Shopiro,* *(Cal.

---

*In *Shopiro* v. *Shopiro* a hearing was granted by the Supreme Court, and the appeal was thereafter dismissed pursuant to stipulation.

App.) 153 P.2d 62.) In the present proceeding it appears that it was stipulated that the fixing of the fee might be deferred until proceedings on the motion in the trial court were concluded.

In awarding support for a child or in fixing attorney fees the court should be guided by what appears to be for the best interests of the child. Attorney fees in a case of this character should not be fixed nor should they be sought on a scale to unduly enrich the attorney. The amount of attorney fees in a proceeding for support of a child should be fixed somewhat as the amount of support for a wife in a divorce action is ascertained—by considering the importance of the action, the legal questions involved, the amount of time consumed in the conduct of the case, the usual charges in similar communities and the possible and probable amount, if any, that may be recovered. (*Shapiro* v. *Shapiro, supra.*)

Nothing was recovered, and it appears to me that the fee fixed was sufficient under the circumstances. ''The value of an attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and the nature of such services, its own experience furnishes it with every element necessary to fix their value. Consequently, the trial court is not bound to fix the amount of the fee in accordance with the opinion of expert gentlemen, learned in the law.'' (3 Cal.Jur. § 111, pp. 714-715.) The record herein referring to fixing the amount of attorney fees shows definitely that appellant consented that the court might use its judgment in awarding the amount.

In my opinion the order and decree appealed from should be affirmed.