CHRISTOPHER STONE and GLORIDA STONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stone v. Commissioner
Docket No. 7690-85.
United States Tax Court
T.C. Memo 1987-454; 1987 Tax Ct. Memo LEXIS 451; 54 T.C.M. (CCH) 462; T.C.M. (RIA) 87454; September 10, 1987. Herbert Laskin, for the petitioners. Shelia R. Dansby, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioners income tax as follows: Year
Deficiency
1980
$  495
1981
7,175
1982
8,101
The primary issue concerns the taxation of petitioners in connection with a trust created by petitioners for the benefit of family members. The case was submitted on the basis of a stipulation of facts and attached exhibits. At the time the petition herein was filed, petitioners were husband and wife residing in Los Angeles, California. They filed *453 joint returns for the years ended December 31, 1981, and December 31, 1982. During the years in issue petitioner Christopher Stone was the sole shareholder and President of Record Plant Corporation. His wife Gloria Stone was Vice President of Record Plant Corporation. Their combined salaries totaled $ 137,397 in 1981 and $ 145,485.60 in 1982. In 1981 and 1982 petitioners reported total gross income (before adjustments) in the amount of $ 174,749 and $ 222,245. The components that made up that gross income figure were reported as follows: 1981
1982
Salary
137,397 145,486 Interest and dividends
18,480 6,761 State/local tax refund
3,226 4,010 Capital gains
13,322 (738)
Other income
38,280 82,398 Rental property and
partnerships
(35,956)
(15,672)
Total
174,749 222,245 On October 3, 1980, petitioners, as trustors, and Herbert Laskin, as trustee, entered into a "Trust Agreement" creating the Stone Family Trust. Herbert Laskin (Laskin or the trustee), the trustee of the trust and petitioners' counsel here, drafted the trust instrument. The trust was funded by petitioners' transfer to the trustee *454 of $ 54,000. Shortly after that transfer to the trust, on November 8, 1980, petitioners borrowed this $ 54,000 back from the trust. [1] Interest payments made by petitioners to the trust in connection with this borrowing of the trust corpus appear to be the large part of the income reported by the trust during the period involved here. Interest paid on the loan amounted to $ 990 in 1980, $ 14,350 in 1981, and $ 16,200 in 1982. The trust filed its Forms 1041 "Fiduciary Income Tax Return" on the basis of a fiscal year ending August 31. In its year ending August 31, 1981, the trust reported both total income and interest income of $ 16,867. For the August 31, 1982, year it reported total income of $ 10,437, comprised of $ 85 of interest income qualifying for exclusion, $ 10,000 of "nonqualifying interest", and $ 352 of "nonqualifying dividends". For its August 31, 1983, year, it reported both total income and interest income of $ 16,444. *455 The trust income reported in each of its fiscal years 1980, 1981, and 1982, was used in full either to make distributions to the beneficiaries or to pay "Attorney, accountant, and return preparer fees". The beneficiaries named in the trust were Matthew Stone, Samantha Stone, Lillian Harmel and Fred Harmel. Matthew and Samantha Stone are petitioners' children. The parties stipulated that during the years in issue both Matthew and Samantha were "minors under California law". [2] Lillian and Fred Harmel appear to be the parents of Gloria Stone. The trust agreement provides that "income is to be distributed annually in equal portions to each beneficiary". It further provdies that a distribution to a beneficiary includes payment "to others for the benefit of a beneficiary". In the instrument "the Trustee is directed to pay for the educational expenses of said beneficiary from the Trust income due that child". In addition to "private schooling through the high school level" *456 the term "educational expenses" is defined in the trust instrument as follows: The term "educational expenses" shall be construed to include, but is not limited to, college, post-graduate study, or vocational training (even if not in a college), so long as pursued to advantage by the beneficiary, at an institution of his or her choice; and in determining payments to be made for such education, the Trustee shall take into consideration the beneficiary's related living expenses to the extent that they are reasonable. * * * Despite the provisions of the trust agreement, the trust income was not always "distributed annually in equal portions to each beneficiary", and the educational expenses of petitioners' children apparently were not paid "from the Trust income due that child", but were paid at least in part in addition to the equal portion of the trust income due the child. In both the trust year ending August 31, 1981, and that ending August 31, 1983, petitioners' children received larger distributions than did Lillian and Fred Harmel. In the trust's 1980 through 1982 fiscal years the following distributions of trust income were reported: Fiscal Year
1980
1981
1982
Distribution:
Matthew
5,623
2,472
5,955
Samantha
5,622
2,472
5,955
Lillian
2,811
2,472
1,742
Fred
2,811
2,471
1,742
Total distributed
16,867
9,887
15,394
Fees paid
-0-
550
1,050
Total trust income
16,867
10,437
16,444
*457 Between the trust's creation on October 3, 1980, and the end of its 1982 fiscal year on August 31, 1983, the trust distributed $ 14,050 to Matthew and $ 14,049 to Samantha. Of those amounts distributed, the following amounts were spent for the private schooling of Matthew and Samantha in calendar years 1981 and 1982: 1981
1982
Matthew
$ 4,427
$ 5,472
Samantha
3,930
4,398
$ 8,357
$ 9,870
The amounts spent on Matthew in 1981 and 1982 were paid to Harvard School, a private school for students in grades 7 through 12; the amounts spent on Samantha were paid to Marlborough School, a private school for girls in grades 7 through 12. Matthew attended Harvard School in 1978, 1979, and 1980, as well as in the years before us. Samantha attended Marlborough School in 1979 and 1980, in addition to the years before us. In the notice of deficiency, the Commissioner determined that "the deductions of $ 990.00, $ 14,350.00, and $ 16,200.00 shown on your returns as interest [paid to the Stone Family Trust] for the taxable years ended December 31, 1980, December 31, 1981, and December 31, 1982, respectively, are not allowed because it has not been *458 established that the amounts paid were for interest on a bona fide debt". The Commissioner "further determined in the alternative, that if the alleged loan from the Stone Family Trust which has given rise to the above disputed interest expense deductions is found to be a bona fide obligation, then the amounts paid by the Stone Family Trust for the support of your children is income to you". During the calendar call at which the case was submitted fully stipulated, Government counsel in effect abandoned the first of the two grounds on which the determination of deficiency was based, informing the Court that the Commissioner was not "attacking the validity of the trust" on the basis that petitioners borrowed back the funds used to create it. Also, in its opening brief, the Government reiterated its position, stating that it had "elected not to pursue this theory" of whether the borrowing of the trust corpus "constituted a bona fide debt". Since the bona fide debt issue has not been treated by the parties and instead the case has been presented on the basis of the alternative issue of whether payments made by the trust are properly taxable to petitioners, we limit ourselves to consideration *459 of the alternative issue. As a preliminary matter, however, petitioners argue that because of a perceived inadequacy in the notice of deficiency, the Court lacks jurisdiction to decide the issue of whether the educational expenses paid by the trust constitute income to them. Petitioners argue that the notice of deficiency has not "adequately given the Court jurisdiction over the legal issue in this case". They do not argue that the notice is wholly invalid, but contend merely that it is incapable of supporting our consideration of the issue presented to us here. We disagree. The basis for petitioners' argument is that neither the amount of additional income nor the deficiency that would result from an adjustmen based on the theory before us was included in the notice. Instead, the notice computed the additional income and the deficiency on the basis of the disallowance of interest expense deductions. While this is true, nonetheless, the notice serves unequivocally to apprise petitioners that the issue of whether "amounts paid by the Stone Family Trust for the support of your children is income to you" was being raised. It was listed in the notice as an alternative theory. *460 Petitioners cannot seriously contend that they were unaware of the issue. Their petition to the Court evidences their awareness that the issue was raised in the notice. In their petition they both assigned as error the Commissioner's determination in connection with the issue and stated that they relied upon the following facts "as the basis of their case": (b) Amounts paid by the Trust were paid for or to both Petitioners' parents and Petitioners' children. Petitioners have no legal support obligation as far as their parents are concerned and no funds expended for Petitioners' children were used for any support obligation.
In sum, petitioners were aware that the Government was raising the issue, it is properly before us, and it will be considered. [3]
*461 Section 677(b), IRC 1954, provides in relevant part that: Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income in the discretion of another person, the trustee, or the grantor acting as trustee or co-trustee, may be applied or distributed for the support or maintenance of a beneficiary (other than grantor's spouse) whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. * * * [Emphasis supplied.]
The subsection was added to the Code in 1943 [4] as an exception to the more general provisions of the predecessor to section 677(a). Under section 677(a) the grantor of a trust is treated as "the owner of any portion of a trust * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be -- (1) distributed to the grantor or the grantor's spouse; * * *." (Emphasis supplied.) It is clear under section *462 677(a) that the grantor may be treated as the owner of a portion of a trust if trust income merely may be distributed to him or for his benefit, even if it is not actually so distributed. Section 677(b) provides an exception to section 677(a) to the extent trust income may be, but is not, "applied or distributed for the support or maintenance of a beneficiary (other than grantor's spouse) whom the grantor is legally obligated to support or maintain". Only "to the extent that such income is so applied or distributed" is it taxable to the grantor "under subsection (a)". [5]
*463 There is no question that the beneficiaries involved here, petitioners' minor children, are beneficiaries that petitioners are "legally obligated to support". The California Civil Code provides that "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents". Cal. Civ. Code sec. 196 (West 1982). It is significant that both support and education are recognized in section 196 of the Civil Code as part of the responsibility owed by parents to their minor children. Moreover, children in California are "subject to compulsory full-time education". Cal. Educ. Code sec. 48200 (West 1978). The required education can be attained through attendance at "public full-time day school". Attendance at public school is excused for those children "instructed in a private full-time day school" that complies with the state requirements. Cal. Educ. Code sec. 48222 (West 1978). Petitioners do not challenge that they are legally obligated to support their *464 minor children or that education is a basic part of their obligation. Instead, they contend only that "under California law * * * [they] do not have a legal obligation to send their children to private school". The Commissioner agrees that the issue before us is "whether under California law private schooling constitutes a support obligation", but maintains that under the circumstances presented private schooling does constitute a support obligation of petitioners. [6]
*465 The issue must be decided with reference to California state law. Consequently, the holdings of other courts with respect to similar obligations under the laws of other states are of only limited aid here. [7] It is, instead, the conclusion drawn from a close examination of California law that will be determinative. *466 It has long been stated by the state courts of California that "the minor is entitled to be maintained in a style and condition consonant with his parent's financial ability and position in society." In re Ricky H.,2 Cal.3d 513, 521, 468 P.2d 204, 208, 86 Cal. Rptr. 76, 80 (1970). See, e.g., In re Marriage of Ames,59 Cal. App. 3d 234, 238, 130 Cal. Rptr. 435, 438 (Ct. App. 1976); Chapin v. Superior Court,239 Cal. App. 2d 851, 856, 49 Cal. App. 2d 792, 798, 29 Cal. Rptr. 183, 187 (Dist. Ct. App. 1963); Wong v. Young,80 Cal. App. 2d 391, 395, 181 P.2d 741, 744 (Dist. Ct. App. 1947); Kyne v. Kyne,70 Cal. App. 2d 80, 83, 160 P.2d 910, 912 (Dist. Ct. App. 1945); Shebley v. Peters,53 Cal. App. 288, 293, 200 P. 364, 366 (Dist. Ct. App. 1921). The concept has been codified in section 196 of the Civil Code which in relevant part provides that parents have a "responsibility to support and educate their child in a manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents." *467 While the issue of a parent's obligation to support his child generally occurs in the divorce context, the child's right to support is not limited to that context. The right under section 196 is the child's right and the child can maintain an action against his parent for support. See In re Marriage of O'Connell,80 Cal. App. 3d 849, 856, 146 Cal. Rptr. 26, 30 (Ct. App. 1978); Wong v. Young,80 Cal. App. 2d 391, 181 P.2d 741 (Dist. Ct. App. 1947); Kyne v. Kyne,70 Cal. App. 2d 80, 160 P.2d 910 (Dist. Ct. App. 1945). This Court has previously treated, in a case involving the same type of determination under section 677(b) as is required here, state court decisions relating to child support in the divorce context as having some import on the section 677(b) issue. See Braun v. Commissioner,T.C. Memo. 1984-285. In Braun, the Court considered New Jersey cases arising in the divorce context, but recognized that some of the factors relevant therein "would have no bearing except in a controversy between divorced parents or between a child and a noncustodial parent." We do the same here. *468 The California cases which deal with the issue of the proper level of educational support to be granted a child are few and far between. Even less available are cases dealing specifically with the obligation to provide a private high school education. As to the expenses of a college education, the California district courts of appeal have generally allowed stand the trial court decisions awarding support to a child that would finance that child's attendance at college, so long as "it is for the best interests of the child to be sent to college and the father is financially able to pay the expense." Rawley v. Rawley,94 Cal. App. 2d 562, 565, 210 P.2d 891, 893 (Dist. Ct. App. 1949). See Straub v. Straub,213 Cal. App. 2d 792, 797-798, 29 Cal. Rptr. 183, 187 (Dist. Ct. App. 1963); Frizzell v. Frizzell,158 Cal. App. 2d 652, 657, 323 P.2d 188, 192 (Dist. Ct. App. 1958); Hale v. Hale,55 Cal. App. 2d 879, 882, 132 P.2d 67, 69 (Dist. Ct. App. 1942). The parents' legal obligation under section 196 of the California Civil Code to provide their child with support for education was in 1985 limited by statute to continue *469 to apply only to "any unmarried child who has attained the age of 18, is a full-time high school student, and resides with a parent, until such time as he or she completes the 12th grade or attains the age of 19, whichever first occurs." Cal. Civ. Code sec. 196.5 (West 1987 Supp.); Jones v. Jones,179 Cal. App. 3d 1011, 225 Cal. Rptr. 95 (Ct. App. 1986). While this amendment substantially limits the obligation under California law of parents to send their children to college, it in no way reduces the obligation of support owed under section 196 for the high school education of a minor child. The obligation to educate a minor child was dealt with in In re Marriage of Aylesworth,106 Cal. App. 3d 869, 165 Cal. Rptr. 389 (Ct. App. 1980). In that case, private school tuition was requested for two children, but was awarded to only one of the two. The tuition was awarded to a child who had been enrolled in private school for at least 23 months and who had "educational difficulties" apparently connected with epileptic seizures. The private school education was found to be of "personal benefit to him in helping to alleviate his *470 past anxieties related to school." In re Marriage of Aylesworth,106 Cal. App. 3d at 879. The tuition was not awarded to a child who had never attended private school and who showed no evidence that she would derive any special benefit from private school. Here, it is stipulated that Matthew attended Harvard School during the years 1978 through 1982 and that Samantha attended Marlborough School during the years 1979 through 1982. There is no evidence that the children did not attend private schools in the years before they entered Harvard and Marlborough Schools. Additionally, there is no evidence that would indicate whether either of the children had any special need for or derived any special benefit from their private school education. These lapses in the evidence with respect to the benefit to the children of private education weigh against petitioners' financial ability to pay for the education involved here, which we have obtained from petitioners' returns, indicates that they could well afford to finance their children's private school education. What is even more indicative of both the benefit to petitioners' children of private school education and *471 petitioners' ability to pay for that education is the action of petitioners during the years involved here. Petitioners sent their children to private school for at least two or three years before the trust was created. They apparently believed that such an education was of benefit to their children. We can only assume that, as in Braun v. Commissioner,T.C. Memo. 1984-285, the education that petitioners chose for their children was "imminently reasonable in the light of the background, values and goals of the parents as well as the children." The benefits of the private education were apparently perceived as such that petitioners were willing to pay the costs of tuition in the years before the trust was created. They were clearly both willing and able to finance the private high school education of their children. Under these circumstances, we conclude that the expenses paid by the trust in 1981 and 1982 for the private high school education of petitioners' children are amounts "distributed for the support or maintenance of a beneficiary * * * whom the grantor is legally obligated to support or maintain" under section 677(b), IRC 1954. Consequently, *472 under section 677(a), IRC 1954, petitioners are treated as "the owner of [the] portion of [the] trust whose income" has been so distributed. Decision will be entered under Rule 155.
Footnotes
1. On the date petitioners borrowed the $ 54,000, they executed a promissory note in which they promised to pay to Herbert Laskin "the sum of Fifty Four Thousand Dollars ($ 54,000.00); interest payable at twenty percent (20%) per annum until paid". The principal (and any unpaid interest) was "due and payable * * * [a]t the end of the fifth (5th) year". As security for the note, petitioners "assigned to Herbert Laskin, Trustee of the Stone Family Trust, * * * Ninety Seven Thousand, Five Hundred (97,500) shares of Sausalito Music Factory, Inc." It is stipulated that both the interest rate payable on the note and the security given for it are adequate. ↩
2. California law defines a minor as a person who is "under 18 years of age". Cal. Civil Code sec. 25 (West 1982); see also Cal. Civil Code sec. 25.1↩ (West 1982). 3. Petitioners claim that the burden of proof on this support obligation issue is on the Government. It is petitioners' position that the burden of proof with respect to a determination of increased income is generally on respondent, while only the burden with respect to deductions is on petitioners. To support their position, they cite 9th Circuit cases in which reference is made to the ordinary presumption of correctness usually applied to the Commissioner's notice being denied in the limited circumstance in which the Commissioner's determination that a taxpayer has received unreported income is supported by no evidence but merely by a "naked" or "bare" assessment. See Conforte v. Commissioner,74 T.C. 1160, 1179 (1980), affd. in part, revd. in part, and remanded in part on other issues 692 F.2d 587↩ (9th Cir. 1982), for a discussion of these cases. No such circumstance exists here that would call for a relaxation of petitioners' burden. The Commissioner has not argued that any unreported amounts were received by petitioners. Thus, petitioners are not required to prove nonreceipt of any amounts. Instead, it has been stipulated that the trust paid educational expenses of petitioners' children and it is these amounts that the Commissioner has determined are income to petitioners. No evidence showing nonreceipt of income needs to be presented by petitioners here and no relaxation of their burden of proof is warranted. 4. Sec. 134 of the Revenue Act of 1943, ch. 63, Pub. L. No. 235, 58 Stat. 51. ↩
5. Under subsection (a) the grantor is taxed on trust income by being "treated as the owner of any portion of a trust". Petitioners misconceive the manner in which they would be taxed under section 677(b) and base an argument that the notice of deficiency was inadequate on that misconception. Petitioners contend that they would be taxed as beneficiaries if the Commissioner were sustained. Consequently, they argue, the Commissioner is first required to make adjustments to the trust return before he can make adjustments to petitioners' return. Even aside from the fact that the argument is based on a misconception of the statute, it does not merit serious discussion. Moreover, petitioners' argument is grounded in a misunderstanding of the mechanics of taxation under sec. 677(b). It is petitioners' understanding (and the basis of their argument that if they are to be taxed on trust income under sec. 677(b), such income will "be taxed to them as if distributed to them as beneficiaries". They depend on sec. 1.662(a)-4, Income Tax Regs., for this proposition. However, sec. 1.662(a)-4, which petitioners read as requiring treatment as a beneficiary in the situation before us, in no way governs whether a grantor is to be treated as a beneficiary. Instead, it interprets sec. 662 so that when a trust makes a payment which discharges a beneficiary's (as opposed to a grantor's) legal obligation, that payment is treated "as though directly distributed to him as a beneficiary". Sec. 662 does not determine whether a taxpayer will be treated as a grantor or as a beneficiary, but merely sets forth the consequences of the treatment prescribed by other sections. It is sec. 667(b) that directs how the grantor will be treated if trust payments are used to discharge the grantor's support obligations. Under sec. 667(b) a grantor is taxed under sec. 662, as a beneficiary, only when the support obligation discharged by the trust is "paid out of corpus or out of other than income for the taxable year". Sec. 677(b), IRC 1954. See Scheft v. Commissioner,59 T.C. 428, 434 (1972); sec. 1.677(b)-1(a) and (b), Income Tax Regs. Otherwise, the grantor is taxed under subsection (a), as the owner of a portion of a trust. To the extent the grantor is so treated as the owner of a portion of a trust, the income from it is taxed to him and the trust is disregarded. Scheft v. Commissioner,59 T.C. at 432↩. There is no evidence that the payments made here for the educational expenses of petitioners' children were "paid out of corpus or out of other than income", and thus petitioners are not properly taxable as beneficiaries. 6. The parties' framing of the issue to focus on whether private education is a legal obligation under California law appears to be at least to some extent inconsistent with the language of sec. 677(b)↩. That section governs the treatment of amounts "applied or distributed for the support or maintenance of a beneficiary * * * whom the grantor is legally obligated to support". The legal obligation required by the language seems to be a general one towards the beneficiary, not a specific obligation to expend particular amounts on particular expenses connected with the person to whom the obligation, it will surely also be an expenditure for the "support or maintenance of a beneficiary * * * whom the grantor is legally obligated to support". Consequently, we deal with the issue as narrowly formulated by the parties in their presentation of the case to us here. 7. For instance, petitioners rely heavily on Brooke v. Commissioner,468 F.2d 1155 (9th Cir. 1972). In that case, the 9th Circuit upheld the District Court of Montana's conclusion that "the expenditures made were not the legal obligations of the taxpayer under Montana law". Brooke v. Commissioner,468 F.2d at 1158↩. While that case too involved expenditures made for private school tuition, few facts were reported therein and of those that were reported many appeared to be markedly different from those here. In addition, the determinative Montana statute, though similar, was not identical to the California statute before us. Moreover, the Government was evidently able to find only one Montana case interpreting the Montana support statute that awarded child support to cover a child's education, and that case was decided in 1936.