[Civ. No. 11246.   First Appellate District, Division One.—March 22, 1940.]

TOM KYNE, Jr., a Minor, etc., Respondent, v. TOM KYNE, Appellant.

Laurenz J. Krueger for Appellant.

Allen Spivock, Philander B. Beadle and Samuel Hauser for Respondent.

PETERS, P. J.—Defendant appeals from several designated judgments and orders of the trial court by which it was adjudged that defendant is the father of plaintiff, an

illegitimate child; that he should pay $100 a month for the support of the child from the date of its birth, February 15, 1936, to January 15, 1938, and thereafter, during minority, or unless changed by order of the court, $60 per month; that he should also pay $150 for medical and hospital bills incurred at plaintiff's birth; $3,500 as and for attorneys' fees; and costs of $1,064.20. Neither the interlocutory judgment nor the various orders appealed from are appealable, and the purported appeals therefrom will be dismissed. The final judgment properly appealed from is dated December 16, 1937.

On this appeal the appellant does not challenge the sufficiency of the evidence to sustain the finding that he is the father of the plaintiff. For that reason the facts in reference to that issue need not be set forth in detail. It is sufficient to state that the evidence produced on behalf of respondent, although contradicted by appellant, was to the effect that appellant, a married man, during the months of March, April and May, 1935, had sexual intercourse, on various occasions, with Nola McMinn, then a minor, and that as a result of one of those acts of intercourse, the plaintiff was conceived. Shortly after becoming pregnant, Nola McMinn sued appellant for seduction. Appellant, by an agreement entered into with Nola McMinn, settled this action by the payment to her of $2,100. Thereafter, in November, 1935 (before the birth of plaintiff, which occurred on February 15, 1936), this action was commenced by John Doe Kyne, an unborn minor, by Ruth Filipello, his guardian *ad litem*. Ruth Filipello, a married sister of Nola McMinn, had been appointed guardian *ad litem* on the petition of the expectant mother, herself a minor. Demurrers to the original and to the first amended complaint were sustained. Thereafter, a second amended complaint was filed after the birth of the plaintiff. This complaint was filed by the plaintiff, Tom Kyne, Jr., by Ruth Filipello, his guardian *ad litem*. It prays for a judgment adjudicating that defendant is the father of plaintiff; that defendant be ordered to pay $500 per month towards the support of plaintiff, and that plaintiff recover certain hospital and medical expenses, together with reasonable attorneys' fees and costs of suit.

Three trials were had. The first resulted in a verdict for defendant. A new trial was granted. On the second trial the jury disagreed. On the present trial the jury, on the sole issue submitted to it, that of paternity, determined appellant

to be the father of respondent, and the trial court, after taking further evidence on the issue of support, rendered its judgment as outlined above.

■ Appellant contends that the action was prematurely brought. In this regard it is urged that the present action is a hybrid action, first, to establish paternity under section 231 of the Civil Code, and, secondly, for support of an illegitimate under section 196a of the Civil Code; that neither type of action can be maintained by an unborn child; that if the action was unauthorized when commenced it could not later acquire validity, after the birth of the child, by the filing of an amended complaint.

Section 231 of the Civil Code provides: "An action may be brought for the purpose of having declared the existence or nonexistence between the parties of the relation of parent and child, by birth or adoption." It is appellant's contention that the use of the term "birth" indicates that a child must be born before an action may be brought under this section.

Section 196a of the Civil Code, as it read prior to its amendment in 1939, provided: "The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, and in such action the court shall have power to order and enforce performance thereof, the same as under sections 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife."

Appellant contends that this section, applying as it does to a "minor illegitimate child", must be read in connection with section 26 of the Civil Code, which provides that in calculating periods of minority as specified in section 25 of that code such periods "must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority". Appellant contends that, if the two sections be construed together, it necessarily follows that an unborn child may not maintain an action for support by a guardian *ad litem* prior to its birth.

In support of this conclusion appellant also points to the fact that in several instances where it is meant that the particular statute should apply to an unborn child, specific refer-

ence has been made to this fact in the statute. (Sec. 270, Pen. Code; sec. 123, Prob. Code.) Appellant also makes reference to the common-law rule followed in some states, and which appellant claims has been adopted in this state, that a child after birth may not maintain an action for prenatal injuries. Since the filing of the briefs in this case, the Third Appellate District has decided *Scott* v. *McPheeters,* 33 Cal. App. (2d) 629 [92 Pac. (2d) 678, 93 Pac. (2d) 562], and the Supreme Court has denied a hearing therein. In that case an eleven-year-old child, through a guardian *ad litem,* brought an action for prenatal·injuries. The trial court sustained a demurrer. The appellate court reversed the judgment on the ground that section 29 of the Civil Code has changed the common-law rule to the effect that prior to birth a child has no legal existence independent of its mother. Section 29 of the Civil Code reads as follows: "A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth." This is the section which respondent relies upon as justifying the bringing of the present action prior to birth. In the Scott case the court held that section 29 is clear and unambiguous and comes into operation whenever it is in the interests of the child that it should come into operation. It was held that the word "interests", appearing in the section, means "anything that is profitable or beneficial to the child" (p. 631). We think the reasoning of this case is sound. Its application to the present case is obvious. The present action is brought under section 196a for support. That section confers upon a minor illegitimate child the right to enforce support from its father. Obviously, a child must be supported both before, as well as after birth. It is clearly to the best "interests" of the child that its father be compelled to support it, if the mother cannot, prior to its birth. Under such circumstances, section 29 must be read together with section 196a so as to confer the right on an unborn child through a guardian *ad litem* to compel the right to support conferred by the code.

This conclusion is fortified by the fact that under the provisions of section 270 of the Penal Code the father of an illegitimate is guilty of a misdemeanor if he wilfully fails "to furnish necessary food, clothing, shelter or medical attendance or other remedial care" to his minor child. That section, as

amended in 1925, expressly provides that: "A child conceived but not yet born is to be deemed an existing person in so far as this section is concerned." In *People* v. *Yates,* 114 Cal. App. (Supp.) 782 [298 Pac. 961], the appellate department of the Superior Court of Los Angeles held that a father failing to supply food and care to his unborn child was guilty of a misdemeanor, and that this was so even though such food and care obviously would have to be supplied to the child indirectly through its mother. It would be a strange doctrine to hold that a father was criminally liable for failure to support an unborn child, but that there was no civil action by means of which the unborn child, through its guardian, could enforce that responsibility. In the present case the support order requires support only from the date of birth. For reasons already indicated, the commencement of the action prior to birth is contemplated and permitted by section 196a of the Civil Code.

Appellant contends the action is premature for another entirely different reason. It is his theory that an action for support of an illegitimate may not be entertained until paternity is first established under section 231 of the Civil Code. In *Myers* v. *Harrington,* 70 Cal. App. 680, at page 684 [234 Pac. 412, at page 413], the court disposed of this exact contention in the following language: "In the enforcing of the obligation, [i. e., support] it is, of course, necessary to establish the fact of parentage. The section fixing this obligation upon the father of an illegitimate child does not, in and of itself, presuppose that a judgment decreeing the fact of parentage must first be had and obtained before any suit may be maintained for maintenance or support. There appears to be no valid reason why the fact of parentage and the question of the necessity of support and, also, of the ability to support may not all be litigated and determined in one proceeding." Even if this portion of the opinion is *dicta,* as contended by appellant (the court denying the right of support under the facts there set forth), we think it sound. The present action is under section 196a to enforce support. In order to determine whether the plaintiff is entitled to support, the fact of parentage must also be determined. To compel the plaintiff to first proceed under section 231 of the Civil Code, and secure a final judgment thereunder, before starting

his proceeding for support, would, in many cases, defeat the right of support given by section 196a.

In addition to the reasoning in the Myers case, *supra,* there are many cases where the courts on appeal, without specific discussion of the point now being considered, have affirmed judgments secured under section 196a where the issues of paternity and amount of support were determined without a prior adjudication of paternity. (*Mathews* v. *Hornbeck,* 80 Cal. App. 704 [252 Pac. 667] ; *Sweet* v. *Hamilothoris,* 84 Cal. App. 775 [258 Pac. 652] ; *Mensing* v. *Croter,* 209 Cal. 318 [287 Pac. 336, 280 Pac. 1026] ; *Araïs* v. *Kalensnikoff,* 10 Cal. (2d) 428 [74 Pac. (2d) 1043, 115 A. L. R. 163].) The case of *Schallman* v. *Haas,* 33 Cal. App. 28 [164 Pac. 336], relied upon by appellant, does not hold to the contrary. That case merely holds that after a judgment has been rendered establishing paternity, and providing for support, and where that judgment has been stayed pending appeal, the trial court is without jurisdiction to order the appealing defendant to forthwith pay to plaintiff any sums for support and attorneys' fees.

Appellant's next contention is that the trial court committed error in striking from the record all evidence tending to show that Nola McMinn was afflicted with syphilis and that appellant was not. It was the theory of the appellant that if he could show that shortly after the conception of the plaintiff, Nola McMinn was afflicted with syphilis and he was not, that this would tend to show that he was not the father of the plaintiff, and that Nola McMinn had had intercourse with someone else from whom she had contracted the disease. The trial court permitted appellant to introduce, out of order, considerable evidence that he did not and never had had syphilis. Upon the privilege of doctor and patient being waived, the court permitted the doctor who had attended Nola McMinn during her pregnancy, and at the birth of plaintiff, to testify that during the pregnancy, because of the appearance of a rash which ''looked like a very light sunburn'', he had given Nola McMinn four different blood tests to ascertain whether she had syphilis. Three of these tests were negative. One test—the so-called Craig test—resulted in a 1 plus positive reaction. All of the doctors were agreed that this was not satisfactory evidence of the presence of syphilis. Nevertheless, the attending physician gave his patient various

salvarsan and bismuth injections, that being one of the treatments for syphilis. He testified that he did this purely as a precautionary measure to protect the unborn child; that the treatments were not "strictly necessary"; and that "at no time was I positive she had syphilis".

The trial court, after the introduction of this evidence, upon motion of respondent, struck all the evidence relating to syphilis from the record. This was clearly correct. Appellant failed to introduce any evidence from which an inference could properly be drawn that Nola McMinn ever had syphilis. If the attending physician, called as a witness by appellant, and if the other medical witnesses called by him, could not testify that the disease was present, certainly the jury should not have been permitted to speculate upon the question. Appellant simply failed to produce sufficient proof on this issue to go to the jury. The motion to strike was proper.

Appellant also complains of the trial court's ruling that prior statements of Nola McMinn made on the two former trials were admissible only for impeachment purposes and could not be considered as evidence on this trial. ■ The law is settled that the prior testimony of a witness, if inconsistent with testimony given on a later trial, is admissible only for impeachment purposes, but the prior inconsistent statements of a party may be deemed an admission against interest, and may be considered, not only as impeachment but also as evidence of the fact involved. (*Gates* v. *Pendleton,* 71 Cal. App. 752 [236 Pac. 365]; *Card* v. *Boms,* 210 Cal. 200 [291 Pac. 190].) ■ It is appellant's theory that Nola McMinn is, in legal effect, a party to this action. This theory is unsound. Section 196a requires the father and the mother to support their illegitimate children, and provides that: "A civil suit to enforce such obligations may be maintained *in behalf of a minor illegitimate child,* by his mother or guardian." (Italics ours.) Obviously, the infant is the real party in interest. Any support money awarded is for his benefit. Even where the mother appears as plaintiff she is not maintaining the action for herself but "in behalf of" the child. In the present case the mother does not appear even in a representative capacity, the action being maintained by a guardian *ad litem* on behalf of the child. No complaint is, or can be, made that the trial court did not permit full in-

terrogation of Nola McMinn as to her prior testimony. The ruling of the trial court that such prior statements were only admissible for impeachment purposes was correct.

Appellant's next contention is that he was unduly circumscribed in his efforts to show previous unchastity on the part of Nola McMinn. ■ The rule is well-settled that "evidence of illicit relation on the part of the mother of an illegitimate child with men other than the defendant, whom she alleges to be its father, must be directed to a time at or about the time when, in the ordinary course of nature, the child must have been begotten". (*Mensing* v. *Croter*, 209 Cal. 318, 320 [287 Pac. 336, 337, 280 Pac. 1026] ; see, also, *Estate of Gird*, 157 Cal. 534 [108 Pac. 499, 137 Am. St. Rep. 131].)
■ On the present trial Nola McMinn testified that she did not keep company or go out with other men during the months of March, April, May and June, 1935,—the only months that the child could have been conceived. It is true that on one of the prior trials she testified that she went out with several designated men during this period, although she denied any improper relations with them. On the present trial she explained this inconsistency. As already held, such evidence given on the preceding trials was not evidence as to the fact in the present trial, but was admissible solely for impeachment purposes. This being so, the various rulings of the trial court precluding appellant from interrogating Nola McMinn about her relationships with various men long before the child was conceived, fall squarely within the rule announced in *Mensing* v. *Croter* and *Estate of Gird, supra*. Appellant simply failed to produce the necessary foundation upon which the admission of such evidence could be predicated.

■ Appellant next makes several contentions with regard to the provision in the judgment that defendant pay plaintiff the sum of $3,500 as and for attorneys' fees. It is first urged that attorneys' fees may not be allowed at all in an action brought under section 196a of the Civil Code. This point has recently been decided adversely to the contentions of appellant by the Supreme Court. In the case of *Arais* v. *Kalensnikoff*, 10 Cal. (2d) 428 [74 Pac. (2d) 1043, at page 1047, 115 A. L. R. 163], the court stated (p. 434) : "Also, as section 196a of the Civil Code requires a father to support his child, the trial court had power to order him to pay at-

torney's fees in the action brought to enforce that obligation. The amount which the defendant was ordered to pay is not excessive in view of the evidence concerning his financial ability and was properly allowed. (*Paxton* v. *Paxton*, 150 Cal. 667 [89 Pac. 1083].)''

■ Appellant, while recognizing the holding in the Arais case, contends that it is not proper to make such allowance after the services have been performed. Certain cases involving the allowance of fees in divorce actions have been thus interpreted. (See 1 Cal. Jur., p. 998, sec. 51.) This rule has no application here. In cases under section 196a of the Civil Code the allowance of attorney's fee is predicated upon the theory that such legal services are part of the child's right to support. In *Schallman* v. *Haas*, 33 Cal. App. 28 [164 Pac. 336], it was held that the court is without power to allow such fees *before* judgment. The Arais case determined that it was proper to allow the attorney's fees as part of the judgment. Since they are allowed as part of the judgment it is obvious that they must be allowed after the services have been rendered.

■ Appellant also challenges the award of attorneys' fees as excessive. This contention is predicated upon the theory that there were two separate actions before the trial court—one under section 231 of the Civil Code to establish paternity, and a separate action under section 196a for support, and that attorneys' fees may not be allowed under section 231. Based on this premise, it is urged that if all of the work done by the attorneys under section 231 be subtracted from the total work done by them, the award of $3,500 for services in reference to the support order is grossly excessive. As already pointed out in discussing the question as to whether this action was prematurely brought, this action was brought under section 196a to enforce the right to support. Attorneys' fees are admittedly allowable under that section. In establishing the rights conferred by that section, proof of paternity is a jurisdictional prerequisite. The evidence shows that the attorneys were required to participate in three jury trials. Various motions were argued and various incidental proceedings had. The amount that appellant was ordered to pay is not excessive in view of the evidence concerning his financial ability, and the evidence as to the services rendered.

■    The appellant next contends that the judgment improperly provides for any support prior to the date of judgment.   The judgment is dated December 16, 1937.   It orders the defendant to make monthly payments commencing as of February 15, 1936, the date of the birth of respondent.   The complaint was filed in November, 1935.   In *Mathews* v. *Hornbeck*, 80 Cal. App. 704 [252 Pac. 667], the court squarely held, in an action brought under section 196a, that a judgment requiring the father to pay for his child's support from the date the complaint was filed was proper. ˙ The court, in that case, fully discusses the point under consideration and distinguishes the case of *Demartini* v. *Marini*, 45 Cal. App. 418 [187 Pac. 985], relied upon by appellant here.   The point is without merit.        ·

■    Appellant next contends that the entire action is equitable; that the trial court submitted the issue of paternity to a jury and entered an interlocutory judgment based on its verdict; that thereafter the trial court took evidence on the issue involving the amount of support money to be awarded; that the trial court made findings of fact in reference thereto; that the finding therein as to paternity merely "parroted" the jury's finding; that separate and independent findings should have been made on the paternity issue.   The procedure adopted by the trial court was clearly correct.   ■ The issue of paternity involved in the support action is a legal issue, and was properly decided by the jury.   In *Myers* v. *Harrington*, 70 Cal. App. 680, 689 [234 Pac. 412], it was held that the issue of paternity is a legal issue.   The procedure of the trial court in the instant case was apparently patterned on that adopted in *Mensing* v. *Croter*, 209 Cal. 318 [287 Pac. 336, 280 Pac. 1026].   As to fixing the amount of support, section 196a provides that this shall be fixed by the "court".   The issues involved therein are of equitable cognizance.   This is conceded by appellant.   The procedure adopted by the trial court was correct.

■    The last major contention of the appellant is that certain instructions were improperly given.   Preliminarily it should be said that in presenting this point appellant has failed to comply with that portion of the rules of the Supreme Court and District Courts of Appeal (Rule VIII, sec. 3) which provides that "where instructions given to a jury are attacked as erroneous, all other instructions given, bearing

upon that subject, must be printed in full in the appellant's brief''. The underlying purpose of this rule is well-exemplified in the present case. Had all the instructions on the point involved been printed in the appellant's brief, it would have at once been apparent that no error was committed. The contention of appellant in this regard is that it was error to instruct the jury that the only issue submitted to them was whether the defendant is or is not the father of plaintiff. Complaint is also made that but two forms of verdict were submitted to the jury, one finding the defendant to be the father of the plaintiff, and the other finding he was not. It is contended that the jury should have been instructed, and should have been given a form of verdict, to the effect that they could find that they did not know whether defendant was the father. The jury was several times clearly and correctly instructed that the burden was on the plaintiff, and that unless he proved his case by a preponderance of the evidence their verdict must be for defendant. No contention is made that appellant offered any instruction on the point now under consideration. The point is without merit.

The other points raised by appellant need not be separately considered. They have all been considered and are found to be without merit.

Although appellant does not challenge the sufficiency of the evidence to sustain the judgment, we have, nevertheless, read the entire transcript. It appears therefrom that the case was fairly tried, that no error was committed therein, and that the judgment is amply supported.

As already indicated, appellant has appealed from various orders and from the interlocutory judgment entered after the rendition of the jury's verdict. None of these are appealable. The appeals therefrom are dismissed. The final judgment properly appealed from is affirmed.

Knight, J., concurred.

Justice Ward, deeming himself disqualified, did not participate herein.