[Civ. No. 3686. Fourth Dist. July 14, 1948.]

KENNETH FOSHEE et al., Appellants, v. WESLEY WOLTERS et al., Respondents.

WILLIAM G. CLOES et al., Respondents, v. JOHN K. FOSHEE, Appellant.

WESLEY J. WOLTERS et al., Respondents, v. JACK RUDY et al., Appellants.

(Three Cases.)

Horton & Knox and Smith & Dickenson for Appellants.

Clarence Harden and Monroe & McInnis for Respondents.

MARKS, J.—The three cases involved in this appeal were consolidated for trial and appeal, and grew out of an automobile collision which happened at about 6 o'clock p. m. on May 17, 1946, on U. S. Highway No. 80 about 6 miles east of Holtville in Imperial County.

Judgment went against plaintiffs and appellants, Kenneth and Virginia Foshee. Plaintiffs and respondents William G. Cloes and Arthur F. Wollgast were given judgment against John Kenneth Foshee; William G. Cloes in the sum of $6,-

002.81, and Arthur F. Wollgast in the sum of $2,007.21. The plaintiffs and respondents Wesley J. Wolters and Iona S. Wolters were given judgment against Jack Rudy and John Kenneth Foshee in the sum of $17,196.31. The actions against California & Arizona Produce Company, a corporation, and all defendants sued under fictitious names, other than Jack Rudy, were dismissed. Kenneth Foshee, John K. Foshee, and John Kenneth Foshee are names used by the same person.

An appeal was taken by plaintiffs and appellants and by all defendants and appellants, but only one brief has been filed and is on behalf of John Kenneth Foshee. The other appellants have made no appearance either by brief or oral argument. For brevity, except when otherwise necessary, we will hereafter refer to John Kenneth Foshee as the defendant, to the respondents as the plaintiffs, and to U. S. Highway No. 80 as the highway.

At the place of the accident the highway runs in a general easterly and westerly direction and is straight with an unobstructed view for about a mile. It is a concrete roadway about 20 feet wide with a white line in its center. On the southerly side is a 4-foot oiled shoulder, a 5-foot gravel shoulder and a borrow pit about 5 feet deep. On the northerly side is a 3-foot oiled shoulder, a 4-foot graveled shoulder and a like borrow pit. The plaintiffs and two other persons who were riding in the car, all of whom testified at the trial, were traveling easterly on the highway in a Buick sedan owned and operated by Wesley Wolters. Defendant was driving his Plymouth sedan westerly at the same time.

The testimony of the occupants of the Wolters car may be very generally summarized as follows: That Wolters was driving his car easterly on his right hand half of the pavement at a speed of not more than 45 miles per hour; that when defendant's car was around 200 or 300 feet from them it swerved onto the southerly half of the pavement; that as the two cars approached each other, and to avoid a head-on collision, Wolters swerved his car northerly to his left so that part of it, at least the left wheels, were northerly of the center line; that at the same time defendant swerved his car northerly to his right and into the Wolters car causing both vehicles to skid to the southerly side of the highway. The principal damage was on the right sides of the two cars.

The story of the defendant was in sharp conflict with the foregoing. He maintained that at all times his car was on its

right hand half of the road; that at the time of the collision its right wheels were off the pavement and into the weeds on the northerly side; that Wolters drove onto the northerly half of the highway in front of him; that the impact occurred near the northerly edge of the pavement and on Foshee's half of the highway.

Two members of the California Highway Patrol reached the scene shortly after the accident. . They found a large spot of oil and water about 2 feet southerly from the northerly edge of the pavement and glass scattered over that part of the cement. Both cars were on the southerly part of the highway with the Wolters car 36 feet southeast of the spot and the Foshee car 39 feet southwest of it. Sixty-two feet separated the cars after they came to rest. Tire marks led from the oil and water spot to the wheels of the two cars.

All of the complaints alleged negligence in general terms and the trial judge found in general terms that Foshee was negligent; that his negligence was the proximte cause of the injuries to plaintiffs; that plaintiffs were not contributorily negligent.

Defendant's chief ground for a reversal of the judgment is based on an oral summary of the evidence by the trial judge at the close of the trial, and his opinion on how the accident happened, as disclosed in this summary. Defendant argues that the trial judge refused to accept either the Wolters or the Foshee version of how the accident happened but reached into thin air and concocted a version of his own which is not only unsupported by, but is contrary to all of the evidence in the case. From this he argues that the opinion shows the erroneous process of reasoning used by the trial judge in reaching his conclusions, which, being unsupported by any evidence, furnishes sufficient grounds for a reversal of the judgment, citing, *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740 [47 P.2d 273], and *Noble* v. *Kertz & Sons Feed Co.,* 72 Cal. App.2d 153 [164 P.2d 257].

This argument lacks convincing force when considered in the light of all the evidence in the case both oral and documentary and the summary as given by the judge.

It is clear that the trial judge accepted as true the evidence offered by plaintiffs to the effect that the Wolters car was proceeding easterly on its own proper side of the highway when the Foshee car swerved from its proper position onto the southerly half of the roadway and that the two automo-

biles were thus approaching each other on this southerly half which was 10 feet in width. He also accepted as true, evidence that both cars were turned northerly and that the impact occurred where the oil and water spot appeared on the pavement which he described as within about 1 foot from the northerly edge of the concrete.

It thus appears that the chief difference between the evidence of plaintiffs and the summary of the trial judge was as to the exact point of the impact. The witnesses for plaintiffs, or some of them, admitted that the left wheels of their car might have been as much as 2 feet northerly from the center line, while the judge placed the point of impact at the oil and water circle, the northerly side of which he said was about 1 foot south of the northerly edge of the cement. Witnesses described the circle as about 4 feet in diameter. Thus, if we assume that the estimates of plaintiffs were exact and that the left wheels were exactly 2 feet north of the center line, which would be a violent assumption under the circumstances, there would remain only 3 feet of pavement between those wheels and the southerly edge of the circle assuming again that the other estimates were exactly correct. ■ It is common knowledge that automobiles have an overhang extending beyond the wheels. It is also common knowledge that in a violent collision a car may be driven some distance in the opposite direction from which the impact comes. Therefore the inference may be drawn from the evidence in this case that there is little important difference in the plaintiff's evidence as to the point of impact and the summary of the trial judge on the same question.

■ That the trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses is too well established to need citation of authority. The trial judge sitting without a jury may accept as true any part of the competent evidence before him and may reject any part of it as either untrue or given in honest mistake. The variance here is too unimportant to justify a reversal of the judgment.

■ The trial judge in his summary concluded that the circle of oil and water marked the point of impact. The argument of defendant to the effect that this conclusion is without evidentiary support is not borne out by the record. The officers described the oil and water on the pavement, also scratches in it, and tire marks leading to the wheels of both cars. This evidence amply supports the inference of the trial judge that the point of impact was marked by the circle.

A motion for new trial was made and denied. A similar question was before us in *Sassano* v. *Roullard*, 27 Cal.App.2d 372 [81 P.2d 213], and was disposed of as follows:

"It is argued that it must be concluded from the foregoing statement that the verdict was inadequate and that it was the result of a compromise within the rule announced in the case of *Bencich* v. *Market St. Ry. Co.*, 20 Cal.App.2d 518 [67 P.2d 398]. Of course, the trial judge's statement supports both of those arguments.

"The question for us to decide here is not what were the views of the trial judge immediately after the verdict was announced, but what they were when he ruled on the motion for new trial after the lapse of time had given him occasion for mature reflection and study on the question. If he entertained those views when he ruled on the motion he should have promptly granted a new trial. Otherwise he would have been derelict in his duty. We must presume that in ruling on the motion for new trial the trial judge faithfully performed his duty. (*Olinger* v. *Pacific Greyhound Lines*, 7 Cal.App.2d 484 [46 P.2d 774].) In other words, we must conclude that after mature reflection the judicial mind had been changed and that the views expressed when the verdict was received were no longer the views of the judge. We make these observations with the rule in mind that the oral or written opinion of a trial judge stating his reasons why he did or did not take a certain action are not controlling on appeal." (See, also, *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366 [162 P.2d 669].)

The conclusion follows that the argument to the effect that the trial judge's process of reasoning by which the judgment was arrived at was unsupported by the evidence and was contrary to the evidence is without merit.

The only other question argued by defendant is that the award of $6,002.81 damages to William G. Cloes is excessive. This award is divided into $5,000 general damages, $900 for loss of earnings and $102.81 for medicine and hospital bills. The last item is not questioned.

In his complaint Cloes alleged that his injuries consisted of a fracture of the humerus, a dislocation of the left shoulder and severe lacerations and bruises all of which caused him great pain and suffering, and that some of the injuries would be permanent.

Cloes testified to these injuries and that they caused him pain and suffering. The trial started on January 13, 1947, almost eight months after the accident. Mr. Cloes testified that the movement of his arm was then restricted in both the elbow and shoulder joints and that during cold weather he suffered pain in the shoulder.

It is argued that the award of $5,000 general damages is excessive. It is also argued that the award of $900 for loss of earnings is excessive. The statement that there is evidence supporting this latter award should dispose of that question.

■ It is only when the amount of damages awarded are so disproportionate to the injuries received as to suggest passion, prejudice or corruption on the part of the trier of fact that an appellate court may control the amount of damages awarded. ■ While the award to Cloes may be liberal it is not so grossly excessive as to bring the case within that rule. (See, *Bond* v. *United Railway Co.*, 159 Cal. 270 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687] ; *Johnston* v. *Long*, 30 Cal.2d 54 [181 P.2d 645] ; *Sassano* v. *Roullard, supra; Ure* v. *Maggio Bros.*, 24 Cal.App.2d 490 [75 P.2d 534], and 32 Cal.App.2d 111 [89 P.2d 436] ; *Clark* v. *Huddleston*, 50 Cal.App.2d 311 [122 P.2d 952] ; *Prunty* v *Allred*, 73 Cal. App.2d 67 [165 P.2d 935].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.