[Civ. No. 18625.   Second Dist., Div. One.   Mar. 26, 1952.]

VALDENE L. KILSTROM, Appellant, v. REX A. BRON-NENBERG, as Administrator, etc., et al., Respondents.

Oscar M. Gipson and David P. Hatch for Appellant.

Fred W. Chase for Respondents.

DORAN, J.—The appellant's brief states that ''on or about March 13, 1948, plaintiff turned over to her father (George Marion Fuller) money belonging to her amounting to $7,-193.30 in cash on the understanding between them that he was to hold it in trust for her pending the investment thereof. . . . before it was invested he died intestate on April 5, 1948, possessed with the money.''

It is also claimed that ''the money has been turned over to or has come into the possession of Jemima Fuller,'' George Fuller's widow, who died in March, 1950. The respondent Bronnenberg, Mrs. Fuller's son, is administrator of Mr. Fuller's estate, and executor under the will of Jemima Fuller. Appellant's claim for the money was rejected in the George Fuller estate; no claim was filed in the estate of Jemima Fuller.

Respondents admit that Mr. Fuller received the money in question but claim that the money rightly belonged not to the daughter but to the father. The trial court sustained respondents' contentions and concluded that the appellant daughter was entitled to take nothing.

The record discloses that in August, 1947, George Marion Fuller conveyed to appellant daughter certain property in Long Beach. In March, 1948, the property was sold for $7,193.30, and paid for by an escrow check made out to the daughter, Valdene Kilstrom. The father and daughter took this check to the drawee bank and received $500 in cash on account, which sum was immediately turned over by Valdene

to Mr. Fuller. Appellant now claims that this $500 was by way of a gift to the father. The balance of the purchase price, received shortly thereafter, was likewise at once delivered by Valdene to Mr. Fuller, who, appellant claims, was to hold the money as a trustee pending a purposed purchase of Oregon property by appellant.

There was evidence that on other occasions Mr. Fuller had transferred property into the daughter's name and that the latter had signed papers in connection therewith without claiming any interest in such property, and without being fully informed as to the facts. Evidence was also introduced to show that the father continued to collect rent from the Long Beach property after transferring title to the appellant; that no gift tax return in reference thereto was filed, and that no report of the sale was made in appellant's income tax report.

Rex Bronnenberg, administrator, testified that Mr. Fuller left no assets; that Bronnenberg, a broker, handled the sale of the property for Mr. Fuller, and that aside from acknowledging Valdene's deed as a notary, no conversation was had with the daughter concerning the sale. Bronnenberg also stated that after Fuller's death, Jemima Fuller "told me that Mr. Fuller had given her the money he got from his property at Long Beach."

One of appellant's main contentions is that the trial court "erred in disregarding certain uncontradicted testimony," namely, that of plaintiff and plaintiff's husband, to the effect that proceeds of the Long Beach sale were delivered to George Marion Fuller with the understanding "that the money was to be held in trust by him for her use and benefit." The trial court's findings were to the contrary. In this connection appellant argues that "the deed from Fuller to his daughter establishes conclusively as a matter of law that the property and money belonged to plaintiff, and the findings to the contrary are not supported by evidence and are against law."

As said in *Foshee* v. *Wolters,* 86 Cal.App.2d 766, 770 [195 P.2d 930] : "That the trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses is too well established to need citation of authority. The trial judge sitting without a jury may accept as true any part of the competent evidence before him and may reject any part of it as either untrue or given in honest mistake." That

the weight and credibility of testimony is affected not only by other evidence which is directly contradictory, but also by pertinent circumstances and the demeanor of witnesses, is well known. Such seems to have been the situation in the instant case.

The trial court set forth specific reasons for disregarding plaintiff's evidence, as follows: "The evidence, to say the least, that was offered by the plaintiff was not convincing. As to the testimony that she turned over the $7,193.30 to her father I have no doubt. That it was her money, I have grave doubt. Everything in her actions as well as those of her husband point to the fact that claim on that money was an afterthought, and that the thought came considerably after death."

. Referring to the presumption of section 1963(7) of the Code of Civil Procedure, "That money paid by one to another was due to the latter," the trial court further said: "And she did not treat it (the money) as hers. She delivered it to him because it was due to him. The whole manner in which the sale was handled and the fact that the $500.00 which she got in escrow was immediately turned over to her father, well, everything shows just what I found, that the money paid to him was due to him. And that is the presumption laid down by Subdivision 7 of 1963. . . . Of course, if the recital in the deed that the property was her separate property is conclusive, then my finding on that is error."

Appellant's brief lays considerable stress on the fact that Mr. Fuller had conveyed the property to appellant, claiming that the deed "is conclusive in its effect and cannot be limited in its operation as to the estate conveyed, by oral evidence," citing *Hebert* v. *Miller,* 94 Cal.App.2d 211 [210 P.2d 251]. A reading of the Hebert case, however, discloses little similarity to the present situation.

As noted by respondents, "It must be remembered that we are not in this action trying the title to the real property." And as further stated in respondents' brief, "The mere fact that record title was in the name of the daughter does not preclude the court from believing that the beneficial interest remained in the father as between the two of them, especially in view of the fact that on other occasions similar dealings were had in the name of the daughter, and further in view of the fact that the father here retained the

rental income and handled all details of the sale and proceeds of the sale, even down to the last 30 cents.''

■ It is also claimed that the ''Finding that Fuller was not in possession of the money at the time of his death is not supported by evidence and is against law.'' Rex Bronnenberg, however, ''testified directly that as administrator of the Estate of Mr. Fuller, he found no money among his effects.'' Moreover, as respondents state, ''whether or not he had it in his possession at the time of his death would be immaterial as appellant's claim is defeated by the finding as to the ownership of the money.''

The entire record discloses that the trial judge, confronted with questions of credibility of witnesses and weight of evidence, elected to disbelieve appellant's version of the transaction. Such, indeed is the peculiar function of a trial court. In view of the evidence which was before that court, reasonable inferences to be drawn from the various circumstances connected with the sale, and previous transactions between father and daughter, the conclusions reached by the trial court cannot be deemed unsupported. Under such circumstances it is not within the province of a reviewing court to disturb the findings and judgment. No reversible error has been pointed out.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 14, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.