[Civ. No. 32270. Second Dist., Div. Five. Feb. 14, 1969.]

SHIRLEY VAN BUSKIRK, Plaintiff and Respondent, v. RICHARD TODD, Defendant and Appellant.

 

 

Jerrell Babb for Defendant and Appellant.

Rose, Klein & Marias and Robert M. Simpson for Plaintiff and Respondent.

REPPY, J.—Defendant and appellant Todd appeals from a judgment decreeing paternity and requiring support of a minor child.

The mother of the child in question, Shirley Van Buskirk (Shirley), was the plaintiff in the action. In her complaint she alleged her relationship to the child but did not state specifically in the caption or body of the complaint that the action was brought on behalf of the child; nor did she designate that it was brought under any specific statutory authority; nor did she have separate counts for the issue of paternity and the issue of support. At the trial, which was before the court alone, evidence was received, and the matter was argued orally by respective counsel, and the judge decided the case from the bench with some explanatory remarks.

In the ''Argument'' section of the ''Topical Index'' of defendant's opening brief, he lists the following as the points being made :[1]

1. Complaint does not state a cause of action.

2. Action barred by statute of limitations.

3. No findings on statute of limitations issue.

4. Under stepfather situation, appellant not liable for child's support.

5. Trial judge prejudiced, preventing fair trial.

 In his briefs defendant does not specifically set forth the ground that the judgment is not supported by the evidence, but his recital of facts and part of his argument suggests that such is a ground. In this regard, the case is marked by a series of pieces of conflicting evidence, of assertions and contradictions.

For examples: Shirley testified, in effect, .that for a substan-

---

[1]For expedition they are placed here in different order and are condensed in wording.

tial period before, during and after the indicated time of conception of the child she had had sexual intercourse with no other person than defendant. Defendant testified that Shirley told him that during this time she was having such intimate relations with other boys. Defendant testified that he always used prophylactics when he had sexual intercourse with Shirley. Shirley testified that defendant never did. Defense witnesses testified that Shirley had a reputation for being unchaste. Shirley's witnesses testified that she had a good moral reputation until it became known that she was pregnant by defendant. Defendant testified that he was threatened with prosecution for statutory rape by Shirley's parents, when she was present, if he would not support the child. Shirley denied her parents made any such threat. Shirley said that defendant gave her permission to use his name for the child. Defendant denied this, although he admitted that he did not object.

However, on one point there was no conflict between the parties. They both testified that they engaged in numerous acts of sexual intercourse at the time medically indicated for the conception of the child.

It is clear from the ultimate findings made by the trial judge that the conflicts were resolved against the defendant herein. ▮ Applicable here are the familiar rules that the resolution of such conflicts by the trial judge, who had the opportunity of observing the demeanor of the witnesses while testifying, will not be disturbed on appeal (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 786-787 [59 Cal.Rptr. 141, 427 P.2d 805] ; *Kilstrom* v. *Bronnenberg*, 110 Cal.App.2d 62, 64-65 [242 P.2d 65] ; *Bonaccorso* v. *Kaplan*, 218 Cal.App.2d 63, 67-68 [32 Cal.Rptr. 69] ), and that the task of the appellate court begins and ends with the finding of substantial evidence supporting the findings of the trial court. (*Rast* v. *Fischer*, 107 Cal.App. 2d 129, 135 [236 P.2d 393] ; *Machado* v. *Machado*, 188 Cal. App.2d 141, 145 [10 Cal.Rptr. 347].)

▮ Defendant's counsel urges that there was one bit of testimony adverse to Shirley and the child which was uncontradicted. He alludes to the statement of a young man named Lee (who went with Shirley for awhile after the birth of her child) that Shirley told him that she did not know who was the father of her child. When Shirley testified on rebuttal, she did not specifically deny making this statement. However, Lee had testified on direct that when he and Shirley were considering marriage and he proposed adoption of the child,

Shirley said to him, "Let him [defendant] pay for it; he is paying on the child." indicating that she considered him liable as the father. In addition, the evidence of Shirley's good moral reputation before pregnancy and her testimony that she had had sexual intercourse only with defendant amounted to circumstantial refutation of Lee's testimony. Moreover, Shirley brought out the circumstance that she had broken off her relationship with Lee, indicating a motive for Lee to fabricate with respect to her. Furthermore, if the trial judge believed Shirley over Lee (which obviously he did) Lee was impeached in parts of his testimony relating to other subjects; and, of course, the trial judge had the opportunity to see Lee, observe his demeanor and judge his credibility. He could have decided, and probably did decide, that he did not believe Lee's testimony about Shirley saying to him she didn't know who the father was, even if Shirley had not directly refuted it. (*Williams* v. *Standard Acc. Ins. Co.*, 158 Cal.App.2d 506 [322 P.2d 1026].) Finally, that one item of defensive evidence, even if believed by the trial judge, did not require him to discount the abundance of evidence favorable to the child, which he characterized as overwhelming.

Defendant also urges, in essence, that the material in the letters from Shirley to defendant (which he introduced into evidence) was at such odds with Shirley's verbal testimony that it made it inherently improbable and therefore unsubstantial and not supportive of the trial judge's ultimate findings. We have considered the letters carefully. They do not carry the connotation suggested by defendant. There is nothing in them which required the trial judge to conclude that Shirley was not telling the truth when she testified from the witness stand. They show a Juliet-aged girl very romantically attached to a boy, worried that what had been his formerly reciprocal feelings were no longer constant, and wanting him to come to her. She used the customary feminine ploy of evoking jealousy in the hope it would bring about her wish to have him with her. In her testimony she explained her playful use of the name Shirley "Wrong," and it is clear that by this self-applied appellation she had reference only to the liberties she had been permitting defendant.

■ Among his non-evidential contentions, defendant urges, in essence, that Shirley, if she had attempted to be a plaintiff in her own right, had failed to state a cause of action for herself (Code Civ. Proc., § 430, subd. 6). The claim would have to be that she was seeking, for some purpose of her own

(perhaps as a matter of maintaining her reputation in the community), to have it adjudged that defendant was the father of her child and that she was endeavoring to make a monetary recovery from defendant for herself (such as reimbursement for funds she had already expended for the child under her obligation to support him). However, it is clear from the four corners of the pleading, from its general nature, and from the relief sought that Shirley was not suing in her own behalf.

The other contention of defendant in this area is more to the effect that there is a defect in parties than that there is a failure to state a cause of action. We take it to be defendant's contention that the paternity phase of the case is sanctioned only under Civil Code section 231 and that this section requires the child to appear as plaintiff through a guardian ad litem; that the support phase of the case is sanctioned by Civil Code section 196a and that this section requires the mother, if she maintains the action, to plead that she does so on behalf of the child.

Section 231, Civil Code, provides that "[a]n action may be brought for the purpose of having declared the existence . . . *between the parties* of the relation of parent and child, . . ." (Italics added.) Section 367, Code of Civil Procedure, provides that every action must be prosecuted in the name of the real party in interest, except as provided in section 369 of that code. That section states that a person expressly authorized by statute to do so may sue without joining with him the person for whose benefit the action is prosecuted. The emphasized portion of section 231, Civil Code, would suggest that in a typical paternity action where the child is a minor, he would be the party plaintiff with the claimed parent as the party defendant. Under such circumstances the minor child would appear through a general guardian or a guardian ad litem. (Code Civ. Proc., §§ 372, 373; Civ. Code, § 42.)

Of course, bringing a paternity action in the name of the minor child through a guardian ad litem is a proper way of proceeding, since it is specified by statute, and if a support order is being sought at the same time there is no reason why a cause of action in this respect should not be set forth in a second count. Ordinarily evidence pro and con on the second count would be presented if and when paternity had been decided. Certainly this would be the order of proof when paternity was being decided by a jury (a matter of right) and the amount of support to be paid was being decided by

the court alone (jury not a matter of right.[2]) This was the situation in *Kyne* v. *Kyne,* 38 Cal.App.2d 122 [100 P.2d 806].

However, it has been held that the issue of paternity is properly included in a support proceeding brought under section 196a, Civil Code, as an incident thereto. In *Kyne* v. *Kyne, supra,* 38 Cal.App.2d 122, a second amended complaint was filed by the minor child as plaintiff through a guardian ad litem praying for an adjudication of paternity and for a support order. A jury adjudged paternity, and then the court alone took support evidence and made an order in that regard. On appeal the father urged "that the present action is a hybrid action, first, to establish paternity under section 231 of the Civil Code, and, secondly, for support of an illegitimate under section 196a of the Civil Code; . . ." (p. 126) and that "an action for support of an illegitimate may not be entertained until paternity is first established under section 231 of the Civil Code." (P. 128.) However, Justice Peters, writing the opinion in *Kyne,* pointed out that "The present action is under section 196a to enforce support"[3] indicating that the complaint showed it was strictly such an action and not a "hybrid" one with dual aspects under two code sections. With respect to the father's contention that there should first be a suit under section 231 of the Civil Code and then a separate proceeding under section 196a of the Civil Code, Justice Peters observed as follows (pp. 128-129) : ". . . In *Myers* v. *Harrington* [70 Cal.App. 680 (234 P. 412)], the court disposed of this exact contention in the following language : 'In the enforcing of the obligation, [i.e., support] it is, of course, necessary to establish the fact of parentage. The section fixing this obligation upon the father of an illegitimate child does not, in and of itself, presuppose that a judgment decreeing the fact of parentage must first be had and obtained before any suit may be maintained for maintenance or support. There appears to be no valid reason why the fact of parentage and the question of the necessity of support and, also, of the ability to support may not all be litigated and determined in one proceeding.' Even if this portion of the opinion is *dicta,* as contended by appellant (the court denying the right of support under the facts there set forth), we think it sound. The present action is under section 196a to enforce

---

[2] It is interesting to note that originally defendant in our case demanded a jury.

[3] Section 196a of the Civil Code provides that the support action may be brought through a guardian ad litem as well as by the mother on behalf of the child.

support. In order to determine whether the plaintiff is entitled to support, the fact of parentage must also be determined. To compel the plaintiff to first proceed under section 231 of the Civil Code, and secure a final judgment thereunder, before starting his proceeding for support, would, in many cases, defeat the right of support given by section 196a.

"In addition to the reasoning in the *Myers* case, *supra,* there are many cases where the courts on appeal, without specific discussion of the point now being considered, have affirmed judgments secured under section 196a where the issues of paternity and amount of support were determined without a prior adjudication of paternity. [Citations.]"

If, because the complaint in our case did not designate that it was under section 196a of the Civil Code, it were to be assumed that it was brought under both Civil Code sections (231 as to the paternity issue and 196a as to the support issue) without separately stated counts,[4] the defendant could not get the case reversed by claiming for the first time on appeal that the child had no standing in court because he did not have a guardian ad litem on the paternity issue. We will presume that the mother acted in the manner of a guardian ad litem, and it is clear that she acted in behalf of the minor consistently with the duties of a guardian ad litem. Moreover, any such defect (non-qualified party—§ 430, subd. 4, Code Civ. Proc.) should have been attacked and corrected in the trial court. (*Fernandez* v. *Aburrea,* 42 Cal.App. 131, 133 [183 P. 366].)

Defendant also asserts that (accepting the premise that Shirley, as the mother, could bring the action on behalf of the child on the issue of paternity as well as that of support) the pleading is nonetheless defective because Shirley did not set out in her caption or aver directly in the body of her complaint that she brought the action on behalf of her child. Any imperfection in this respect no doubt would fall under section 430, subdivision 7, Code of Civil Procedure (uncertainty of the complaint). However, it is clear from the four corners of Shirley, as the mother, could bring the action on behalf of the did bring the action on behalf of the child. The pleading should be liberally construed in favor of the child, the real party in interest. Furthermore, defendant did not demur to

---

[4]The nonuse of a guardian ad litem and the employment of a single count seeking both a paternity adjudication and a support order makes it more logical to assume that the action was brought under section 196a, Civil Code, with paternity to be determined as an incident thereto.

the complaint on the basis of these alleged defects, was hardly misled by the situation, and was, in no way, prejudiced.

 Next, defendant contends that the paternity aspect of the suit was barred by a statute of limitation, pointing out the obvious—that if this part of the action were barred, there could be no recovery for support and citing the three-year statute as set out in sections 335 and 338, subdivision 1, Code of Civil Procedure. He argues that, not like a support action where fatherhood is admitted and there is a continuing liability to support based on the needs of the child from time to time, the issue of paternity is one that is tied to a single event occurring at one determinable moment and that therefore time does run against this type of action. Defendant pleaded the bar of the statute of limitation, section 343, Code of Civil Procedure (four years) in his answer. He also made reference to a prior paternity-support suit and its dismissal (discussed *supra*), but did not assert that this had the effect of avoiding the minority tolling provision of section 352, Code of Civil Procedure. The code sections mentioned by defendant are in chapter 3 of title 2 of part 2 of the Code of Civil Procedure, and read in part as follows:

"§ 335. Periods of limitation prescribed. The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"

"§ 338. Within three years: 1. An action upon a liability created by statute, other than a penalty or forfeiture."

"§ 343. Actions for relief not hereinbefore provided for. An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

In all probability the seeking by an illegitimate child of an adjudication that a certain person is his father (carrying with it, as it does, the paternal obligation of support) is an action upon a liability created by statute. (Civ. Code, §§ 231, 196a.) If it is not, then section 343 (the catchall, which is also in said chapter 3) would apply with its four-year time factor. In either event this action was filed *after* the time limitations had run from the date of the child's birth. Respondent asserts, however, that the statutes were tolled because of the minority of the child. Defendant now claims that (assuming that the child can be considered the real party in interest under the nondescriptive wording of the complaint) the statute would not be tolled by reason of such minority, because an action under section 231, Civil Code, would not fall within the

types of actions specified in chapter 3 of title 2 of part 2, Code of Civil Procedure, to which section 352, Code of Civil Procedure, relates. The logic of this argument eludes us since both the section 335-section 338, subdivision 1, limitation (relating to an action upon a liability created by statute) and the section 343 limitation (relating to an action for relief not hereinabove provided for), one of the two of which the paternity action must fall under, are in said chapter 3.

We hold that the action should be considered from the standpoint of the child as the real party in interest and that the statute of limitations in the paternity phase of this action was tolled at all times from the birth of the child to the time Shirley brought the action in his behalf.

Defendant also appears to urge that any tolling of the statute was terminated when Shirley brought an earlier paternity-support action in the Superior Court for Los Angeles County, No. D-613148, entitled Shirley Ann Lewis, a minor, by her guardian ad litem, Marjorie E. Lewis, Plaintiff, vs. Richard Todd, Defendant, on 27 June 1962, and that when she dismissed the action at the last moment to prevent a mandatory dismissal on the motion of defendant she foreclosed the minor from refiling after the limitation period elapsed. However, this is not the rule. The minor can refile, even through the same representative. See annotation, in 86 A.L.R.2d 965, at page 976, where the author states: ''In case of the appointment of a guardian ad litem for an infant, it is held that such guardian can sue within the prescribed period of limitation, but is not obligated to do so, and that if he fails to sue, or having instituted an action within the statutory period, discontinues it, the rights of the infant are not prejudiced thereby, and he may still take advantage of his disability, the action not being barred until the lapse of the statutory period after he becomes of age.''

The annotation indicates that the courts in all jurisdictions which dealt with this point uniformly follow this general rule except the lower New York courts where a split exists as to the situation where a case is filed by a guardian ad litem for a minor and then it is dismissed for failure to prosecute. We feel that the strength of the general rule should prevail. Moreover, the dismissal in our case was voluntarily made before a motion to dismiss on statutory time grounds was heard, although this action may have been taken under the threat that the motion would be granted.

The pretrial conference order recites that '' [t]he parties

have entered into joint and separate pretrial statements which set forth . . . the issues remaining in dispute,'' and specifies that said statements are made a part of the order. The joint pretrial statement, signed by counsel for both sides, states, in part, that the ''separate statements of *legal* and factual contentions as to the *issues remaining in dispute* . . . are attached hereto or will be filed separately.'' (Italics added.) The separate statement of issues and contentions signed by counsel for defendant, under the heading ''Issues'' specifies only ''Who is the father of pltfs [*sic*] child,'' and under the heading ''Contentions'' specifies only, ''That Defendant is not the father of Plaintiffs [*sic*] said child.'' None of the pretrial documents was ever amended.

By not including his contentions and a statement of issues relating to the statute of limitations and the nontolling thereof in the pretrial statements and by not seeing that they were included in the pretrial conference order as originally made or by amendment, defendant abandoned whatever defenses of this nature he had managed to achieve by his answering pleading.

Finally, as to this topic, defendant complains that the trial court failed to make complete findings on the statute of limitations issue, presumably so that he could properly argue the point on appeal. It is true that, although the trial judge made a finding as to when the child was born, he did not make one as to when the action was filed so as to show the span of time which appellant claims compels the application of the bar of the statute. This circumstance is of no significance in light of our holding that any limitation period was tolled. Moreover, no findings on the subject were required because, despite his pleading, defendant did not see to it that the statute of limitations was listed as an issue in the pretrial order originally or by amendment. In any event, the time of filing the complaint shows in the clerk's transcript and could be judicially noticed by us upon proper announcement. Defendant had no difficulty in arguing this issue from that standpoint. Moreover, at the trial defendant did not put the complaint in evidence or ask that the time of its filing be judicially noticed; nor did he object to the proposed findings submitted by respondent or offer any of his own.

Defendant may also be aggrieved because there was no finding about the prior action filed by Shirley on 27 June 1962 through her mother as guardian ad litem. Again the lack of such findings is immaterial because the law does not support

defendant's claim based on this prior filing and because he failed to offer the item in evidence or request that the trial judge judicially notice it, to attack the pleading, to request findings, or to make it an issue in the pretrial. It is also an item we could judiciously notice if it were significant.

Consequently, the entire aspect of appellant's ground on appeal related to the statute of limitations is without merit.

■ Next, defendant urges that the fact that the child, when brought into court so that the judge could see if he had a likeness for defendant, said that his last name was Van Buskirk (the surname of Shirley's then husband) demonstrated that the stepfather had subjected himself to the obligation of supporting the child under the doctrine of *Clevenger* v. *Clevenger*, 189 Cal.App.2d 658 [11 Cal.Rptr. 707, 90 A.L.R.2d 569], which, defendant appears to argue, in turn, relieved defendant, the alleged natural father, of this duty. This argument is unpersuasive. The particular features which supported the *Clevenger* decision were not remotely established through the trial episode just described. Moreover, *Clevenger* only dealt with the matter of imposing liability on the stepfather, not with the concept that circumstances of the nature existent in *Clevenger* would relieve the natural father of his obligation to support his child in the absence of any effort being made to impose liability on the stepfather.

■ Finally, defendant contends that the trial judge was so prejudiced that appellant did not have a fair trial. It is suggested that because he decided the case from the bench he did not weigh it carefully. There is nothing to show he was not weighing the case as the trial progressed and in the course of the oral argument. In addition, defendant claims that the judge had an innate prejudice against defendants in paternity cases. Nothing in the record establishes this. Then he urges that the judge was specifically prejudiced against defendant because he commented, when explaining his decision, that defendant's defense appeared to be that the sexual relations which the parties had should not put him in an unfavorable light with the court but should reflect against Shirley to such an extent that she should not prevail in her contention of paternity on behalf of the child. Actually defendant was not urging such a point, but rather that Shirely had a reputation for being promiscuous with a number of boys and that from this proof the judge should infer that it was likely that another person could be the father of the child. Apparently defendant claims that the alleged

irrelevancy of the remark of the trial judge showed his prejudice. Even if it were true that the trial judge had missed the point of defendant's argument, neither this circumstance nor any other aspect of the remarks demonstrated a prejudice on the part of the trial judge. Defendant also suggests that the trial judge indicated a prejudice against defendant because he did not allow him visitation rights, and he also seems to be claiming this alleged omission as independent error. Defendant did not request any visitation rights, and if he desires them now he can bring the matter before the superior court. No prejudice nor error is established on the basis of the trial court's nonaction in this respect. Finally, the record reflects that the trial was conducted in a manner not unfair to defendant.

The judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 9, 1969.